## Parkrite Auto Park, Inc. v. Shea et al.

December 15, 1950.

Rehearing Denied February 16, 1951.

Chester D. Adams, Judge.

Scott Reed, Job D. Turner, Jr., and Fowler & Fowler for appellant.

Foster Ockerman for appellee.

CLAY, COMMISSIONER—Reversing.

This action was brought for a declaration of rights, and to compel the issuance of permits by certain officials of the City of Lexington to appellant, authorizing it to construct and operate a parking lot in the city. The Chancellor refused to grant the relief prayed.

Appellant has leased a small parkway in front of the Union Station on Main Street in Lexington. Under the zoning ordinance of the city, a permissible use of that property is the operation of a parking lot. Pursuant to the terms of the ordinance, appellant applied to the City Building and License Inspector for the prescribed permit. It also made application to the City Engineer for a permit to cross the sidewalk with a driveway into the parking lot. Apparently the proposed use of the property involved no violation of any ordinances or regulations of the city, or the statutes of the

state. However, the Inspector and Engineer refused to issue the proper permits on the ground that the location of the parking lot would constitute a traffic hazard and the City Manager had requested them to withhold the authorizations. Thereupon this suit was filed.

Appellees filed a special and general demurrer to appellant's petition, and the controversy was determined on the pleadings. The Chancellor took the view that somehow appellant had not come into court with clean hands; that the proposed parking lot would create a traffic hazard and constitute a nuisance; and that the proposed use of the property would be illegal and a violation of the rights of the public. The Chancellor's findings and conclusions were based almost entirely upon his personal knowledge of the physical conditions and the traffic problems in the City of Lexington.

On this appeal appellees urge that their special demurrer should be sustained because appellant did not exhaust its administrative remedies before proceeding in court. This contention is without merit since it is clear from a reading of the applicable statutes and the city ordinances that appellant had no right of appeal to an administrative body, and the Chancellor correctly so adjudged.

Appellees further argue the general demurrer should have been sustained because appellants had not filed proper plans and specifications with the Building Inspector. However, the petition alleges the contrary, and we must accept those allegations rather than appellees' interpretation of what the law requires.

This brings us to the merits of the controversy. The proposed location of the parking lot is near one of Lexington's busiest interestions. The members of this Court, like the Chancellor, are perfectly familiar with the site, and we can likewise take judicial knowledge of the surrounding physical conditions. The lot in question is on the south side of Main Street in front of the Union Station. To the west is the Phoenix Hotel, which is served by Hernando Street on the south side of Main. To the east is the viaduct connecting Main Street and High Street. East of the viaduct is the LaFayette Hotel, the LaFayette-Phoenix garage, and almost directly across the street from the proposed site is another

parking lot. There is no doubt but what this is a congested area. One must speculate, however, concerning the extent to which the operation of this new parking lot would increase congestion. Even if it would materially do so, we think the Chancellor went rather far in determining that this factor branded appellant's business a prospective nuisance, which in effect should be enjoined.

At the outset we are confronted with the fact that the legislative body of the city, acting under its police power and considering the public health, safety and welfare, has ordained that this area may properly be used for parking lot purposes. The provisions of the ordinance in other respects have been complied with. Thus, appellant proposes to engage in a lawful activity.

No one would say that city officials might arbitrarily deny appellant the permits to which it is entitled under the provisions of the ordinance. Yet that is exactly what has been done in the present case. The facts are similar to those in City of Pineville v. Helton, 300 Ky. 170, 188 S. W. 2d 101. There the City Clerk refused to issue a license to a person operating a place of public entertainment. The plaintiff had complied with the terms of a licensing ordinance. He brought a mandamus proceeding, which the present action might well have been. In spite of good faith on the part of city officials who objected to this particular business, we held the plaintiff was entitled to his license. To declare otherwise would have sanctioned the exercise of arbitrary power by the city, contrary to the provisions of Section 2 of the Kentucky Constitution.

It is clear in this case appellant does not propose to violate any statutory law of the state or any ordinances of the city. The Chancellor's judgment could only be upheld if appellant's prospective enterprise must necessarily constitute a common law nuisance. The operation of the parking lot is a perfectly legitimate business. Possibly it may become a nuisance. However, courts must be most careful in condemning a business on this ground because to do so is taking a man's property without compensation.

We have recently had occasion to reconsider the question of enjoining an anticipated nuisance. In City of Somerset v. Sears, 313 Ky. 784, 233 S. W. 2d 530, we

denied the right of a court to enjoin the erection of a drive-in theatre. Even though one of the objections was that traffic congestion would be increased, the same as in this case, the rule we laid down there was, 233 S. W. 2d at page 532: "A property owner has the right lawfully to use his premises as he sees fit, unless such use will necessarily constitute an unreasonable invasion of his neighbor's rights."

We are unable to find anything in the case before us, including the Chancellor's and our own knowledge of the conditions existing, which would justify a finding that appellant's proposed parking lot would *necessarily* constitute a nuisance. It may be that traffic congestion or hazards will be somewhat increased in the area. To a certain extent this would be true upon the opening of almost any type of business on a main thoroughfare. Such possibility alone could not justify a court in depriving one of a use of his property which the legislative body of the city, in the exercise of its police power, has seen fit to authorize.

We appreciate the motives which moved the Chancellor to try and protect the public from what he considered an objectionable enterprise, but they were not sufficient in law or equity to deny appellant the relief asked.

The judgment is reversed for proceedings consistent with this opinion.