**Opha SALLEE, Administratrix of the Estate of Charles D. Wise, Appellant,**

v.

**Roy H. ASHLOCK, Appellee.**

Court of Appeals of Kentucky.

March 7, 1969.

John L. Harbolt, Harry L. Hargadon, Jr., Hargadon, Hargadon, Lenihan & Harbolt, Louisville, for appellant.

Bill V. Seiller, Thomas G. Mooney, Jones, Ewen, MacKenzie & Peden, Chris C. Duvall, Louisville, for appellee.

NOLAN CARTER, Special Commissioner.

This is an action to recover damages for the alleged wrongful death of Charles D. Wise brought by appellant, Opha Sallee, as

administratrix of the decedent's estate, against appellee Roy H. Ashlock. The suit arises from the following facts.

On June 4, 1965, Wise and Ashlock were employees of a drug firm in Louisville. These two young men left work at 4:30 P. M., together with another employee named Bill Meredith. It was payday, and they repaired to Akin's, a neighborhood bar, where they cashed their paychecks and each drank two or three beers. They then drove to Meredith's home in Ashlock's car, where Meredith got out. Wise and Ashlock then proceeded to Ashlock's home, where Ashlock cleaned up and changed clothes. Taking Mrs. Ashlock with them, they returned to Meredith's home and picked him up. From there the four of them drove to the Algonquin Bowling Lanes and let Mrs. Ashlock out of the car.

The three men then drove to Probus' Bar and Restaurant, where Wise had two highballs and Ashlock and Meredith had two beers each. From this bar the three proceeded to Cane Run Bowling Lanes, where they had more drinks. Meredith was driven to the bus line and Wise and Ashlock returned to Cane Run Lanes.

From then on, the testimony as to what occurred is not entirely clear. However, it is established that about 10:50 P.M. on the same evening, while proceeding alone Cane Run Road, Ashlock's car in which he and Wise were riding left the highway and struck a light pole. Both Wise and Ashlock suffered injuries. Wise died as a result of the injuries he received.

There is a conflict in the evidence as to which of the two was the driver of the car at the time of the accident. The question of contributory negligence is not presented on appeal.

Ashlock's injuries included a mild brain concussion. He gave a statement to one of the attorneys for appellant on December 4, 1965, but did not sign it, though he read it at the trial after stating that the statements contained therein were true as of the date he gave the statement. On February 10, 1966, Ashlock's deposition was taken as if under cross-examination.

In the deposition and the statement Ashlock said he could not remember what occurred from the time he left Akin's Bar until June 6, 1965, when he regained consciousness.

At the trial Ashlock testified in chief to several incidents which occurred after leaving Akin's Bar, including the trip out Cane Run Road just prior to the accident, at which time Ashlock testified that Wise was driving the car.

Upon being asked when he first remembered the incidents which he related to the jury, he replied: "About three weeks ago." He then testified that at that time he consulted a psychiatrist in Ford Hospital in Detroit, who administered sodium pentothal to him and asked him some questions. He testified that after this treatment he was able to recall the incidents and occurrences to which he testified at the trial.

Upon cross-examination appellant's attorney undertook to impeach Ashlock's testimony by use of his deposition and his unsigned statement.

Appellee called as a witness Dr. Warren M. Cox, a psychiatrist of Louisville, Kentucky, who testified that such drugs as sodium pentothal and sodium amytal are used by physicians to remove inhibitions from persons who have memory blocks, and that the patient while in a somnolent state is questioned. The doctor was then asked the following hypothetical question:

Q– "Doctor, if I ask you to assume that a person is involved in an accident on June 4, 1965, in which accident they received a mild head concussion and are unconscious for some period of time, and, following which accident, the person professes that they cannot remember anything which happened sooner in time to the accident than some six or seven hours until some two days after the acci-

dent; and if I further advise you that approximately two years after the accident they are administered sodium amytal or sodium pentothal and undergo such a psychiatric interview, is it unlikely that the person could then remember at least a portion of the events that they previously had been unable to remember?

A— I would not find it surprising that he would be able to recover some or all of the memories."

The sole issue submitted to the jury was who was driving the automobile at the time of the accident. The court directed the jury to find for the defendant if it believed that Wise was then driving the car, but to find for plaintiff if the jury believed that Ashlock was then driving the car. The jury returned a verdict in favor of appellee, hence this appeal.

■ The issues raised on appeal all relate to the testimony of the psychiatrist, Dr. Cox. The first objection to his testimony is that the hypothetical question propounded to the doctor asked him to assume, among other things, that appellee had been administered sodium amytal or sodium pentothal, when there was no evidence in the record to that effect. In this contention appellant is in error. Upon direct examination, Ashlock testified as follows:

Q— "And what did the psychiatrist do?"

A— "Put me under sodium pentothal."

Q— "How did he administer that drug?"

A— "Through the vein."

Q—. "And after he put you under sodium pentothal, do you know what he did then?"

A— "Started asking questions."

The rule on what may be included and what is to be excluded in hypothetical questions is thus stated in 31 Am.Jur.2d, Expert and Opinion Evidence, § 56, pp. 561–562:

"Since the purpose .of a hypothetical question is to elicit the opinion of an expert witness on a given condition or a state of facts *in evidence in the case,* the question cannot assume the existence of facts extrinsic to the evidence, and, except where counsel assures the court that such facts will be proved later, the trial court should exclude the question if it assumes unproven facts." (Emphasis added.)

See also Miller v. Watts, Ky., 436 S.W. 2d 515 (decided January 17, 1969), and cases there cited.

■ In their reply brief counsel for appellant insist the testimony of Ashlock that he was administered sodium pentothal was of necessity hearsay evidence, and therefore incompetent. But this testimony went into the record without objection by appellant. It is now too late for appellant to complain. In order for appellent to save the question of the competency of this evidence, objection must have been made at the time of its introduction. Dr. Pepper Bottling Co. v. Ricks, Ky., 376 S.W.2d 299; Louisville Gas & Elec. Co. v. Cornell, Ky., 344 S.W.2d 830; Division of Parks, Dept. of Conservation v. Hines, Ky., 316 S.W.2d 60; 7 Clay's Kentucky Practice, CR 46, Comment 3.

■ The next attack made on the testimony of Dr. Cox is that it was irrelevant. Counsel argues that the sole issue in the case (as submitted to the jury) was whether appellee was the driver of the car at the time of the accident; and that the doctor's testimony did not tend to prove or disprove this issue and is therefore not relevant.

We cannot agree with this contention. Appellant undertook to contradict and impeach the testimony of Ashlock by the use

of his statement and by his deposition given prior to the trial. This type of attack upon the credibility of a witness has been resorted to innumerable times in trials and is sanctioned by CR 26.04. When it is used, it creates an issue as to the credibility to be given the testimony of the particular witness.

That which is relevant or irrelevant is thus defined in Jones on Evidence, Vol. 1, § 151, 270:

> "The rules of logic are called into operation to determine the question of relevancy; and it may be said generally, that whatever naturally and logically tends to establish a fact in issue, is relevant, and that which fails to qualify in this respect is not relevant."

Dr. Cox's testimony served not only to support, corroborate and make more plausible Ashlock's explanation of his partial recovery of memory, but also, in so doing, went directly to the main issue of who was the driver of the car.

■ When a witness's credibility is attacked in the manner pursued here, by the provisions of CR 43.08, he must be given an opportunity to explain the inconsistencies. Meadors v. Commonwealth, 281 Ky. 622, 136 S.W.2d 1066. And where a witness has been impeached, the party introducing him may introduce evidence to corroborate his testimony or support his credibility. 98 C.J.S. Witnesses § 646, et seq.

■ The last argument advanced by appellant is that even if relevant, the testimony of Dr. Cox was inadmissible. Counsel for appellant, in arguing that Dr. Cox's testimony is inadmissible, apparently have in mind the rule that the results of "truth serum" tests are inadmissible in evidence. Dugan v. Commonwealth, Ky., 333 S.W.2d 755. But appellee made no effort to introduce the results of the serum test conducted in Detroit, by Dr. Cox or by any other witness. The rule appellants apparently

rely on has no application to the testimony given by the doctor.

The judgment is affirmed.

All concur.