**Vicki G. NEWBERG, Acting Director of Special Fund, Appellant,**

v.

**James E. JENT; South East Coal Company; Hon. Walter W. Turner, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 92–CA–001071–WC.

Court of Appeals of Kentucky.

Nov. 12, 1993.

As Modified Dec. 22, 1993.

Mark C. Webster, Louisville, for appellant.

Michael G. Johnson, Hindman, for appellee, James E. Jent.

Before HUDDLESTON, JOHNSON and SCHRODER, JJ.

## OPINION

JOHNSON, Judge:

The Special Fund appeals from an opinion of the Workers' Compensation Board (Board) rendered April 10, 1992 which required the Special Fund to commence payment of benefits to appellee, James E. Jent, due to the termination of payments by the employer and the corresponding absence of any credit allowable against the award. We reverse and remand.

In 1979, appellee, James E. Jent, filed two claims for benefits for total occupational disability. Claim number 79–13047 concerned work-related injuries suffered to his back, hip and left knee in October 1978 while bolting the roof of a South East Coal Company (South East) coal mine. The claim was heard by the old Board, which found that Jent had a 100% occupational disability. The Board made an award of $112.00 per week, all of which was apportioned to the employer, South East.

The second claim, 79–30431, concerned the occupational disease of pneumoconiosis. The Board found that Jent was totally and permanently disabled, and that the last exposure to coal dust was May 31, 1979 while in the employ of South East. The Board awarded Jent $121.00 per week, apportioned as follows: 20% to South East, $24.20 per week; 40% to the Coal Miners' Pneumoconiosis Fund, $48.40 per week; and 40% to the Special Fund, $48.40 per week. The Board ordered that the Special Fund pay all benefits due from the occupational disease claim, subject to quarterly reimbursement by the employer and the Coal Miners' Pneumoconiosis Fund. The Board subsequently amended its opinion to reflect that the defendants to the occupational disease award were to receive credit on same for benefits paid on the occupational injury award.

In February 1991, Jent filed an unverified Motion to Accelerate Special Fund Payments. The gist of the motion was that South East had filed a petition in bankruptcy and had terminated its payments on Jent's occupational injury award. Jent requested that the Board "accelerate" the time for payment by the Special Fund, in effect requiring the Special Fund to begin immediate payment of the occupational disease award until such time as South East returns to solvency and resumes payment of the occupational injury award. The Special Fund filed a response in which it claimed that the occupational disease benefits were negated by the occupational injury benefits. The Special Fund also argued that any payment resulting from Jent's motion should be limited to no more than $96.80 per week, the amount of the occupational disease award apportioned to the Special Fund and the Coal Miners' Pneumoconiosis Fund.

The Administrative Law Judge (ALJ) sustained Jent's motion and ordered the Special Fund to begin payment of the occupational disease award in the amount of $96.80 per week, subject to reimbursement from South East in the event it should again become solvent. The Special Fund appealed the order of the ALJ to the Board. In sum, the Special Fund claimed that the ALJ based his decision on hearsay rather than evidence found in the record. The Special Fund took exception to the absence of a certified copy of the bankruptcy petition; the lack of an affidavit stating the type of petition filed, the court in which it was filed, and whether South East was a self-insured employer. Neither Jent nor South East filed a brief with the Board. However, Jent moved to file documents which provided some of the bankruptcy information. The Special Fund claims that the documents should have been struck from the record as being untimely filed. The Special Fund noted that all the documents were available to Jent at the time he filed his original motion in late February 1991, but that the documents were not filed until after the ALJ's decision and after the Special Fund had filed its brief with the Board. The Board sustained Jent's Motion to File Documents and overruled the Fund's Motion to Strike.

The Board affirmed the order of the ALJ. In doing so, the Board skirted the argument made by the Special Fund that the ALJ's order was not based on evidence in the rec-

ord. The Board noted that the Special Fund did not deny that South East had filed a petition in bankruptcy and that the filing of such a petition was easily determined by means of the documents filed by Jent subsequent to the ALJ's order. The Board therefore took judicial notice of the bankruptcy proceedings pursuant to Kentucky Revised Statutes (KRS) 422A.0201 [Kentucky Rules of Evidence (KRE) 201].

In addition, the Board stated that the issue was not whether the Special Fund's liability should be accelerated. Rather, the issue was whether credit on the occupational disease award should be allowed for benefits paid on the occupational injury award when the party liable for the injury award fails to pay. The Board answered in the negative, noting that no credit can be allowed where the benefits upon which the credit is based are not paid. This appeal followed.

The Special Fund raises three issues on appeal:

(1) Whether the ALJ erred in relieving South East of its liability to pay the occupational injury award;

(2) Whether the Board erred in permitting Jent to file additional documents; and

(3) Whether the Board erred in requiring the Special Fund to make payments on the occupational disease award.

Although the Special Fund asserts that the ALJ relieved South East of its obligation to pay the occupational award, the ALJ did no such thing. The ALJ merely ordered the Special Fund to begin payment of the occupational disease claim, subject to reimbursement by South East should it return to solvency. Clearly, the ALJ did not eliminate South East's obligation to pay either the injury or disease award. Consequently, the first issue raised by the Special Fund is without merit, as it is premised upon an incorrect interpretation of the ALJ's order.

■ The second and third issues raised by the Special Fund are similar in that they question the sufficiency of the evidence before the ALJ and the Board. In sum, the Special Fund claims that Jent did not put on sufficient evidence to allow the ALJ to order it to begin payment of benefits on the occupational disease claim. Specifically, the Special Fund objects to the absence of proof as to whether South East is self-insured and whether its liability had been discharged in the bankruptcy proceeding. The Special Fund is correct on this point. The only evidence South East submitted (the documents filed with its motion before the Board) was not properly admitted. KRS 342.285(2) provides, in part: "No new or additional evidence may be introduced before the board except as to the fraud or misconduct of some person engaged in the administration of this chapter and affecting the order, ruling or award, but the board shall otherwise hear the appeal upon the record as certified by the administrative law judge and shall dispose of the appeal in a summary manner." *See Harvey Coal Corp. v. Morris,* 314 Ky. 781, 237 S.W.2d 70 (1951).

■ The Special Fund also asserts that there was no evidence in the record to compel payment of occupational disease benefits. The Special Fund cites *Estep Coal Co. v. Ward,* Ky., 421 S.W.2d 367 (1967), for the proposition that an injury award must be paid, or the need for same extinguished, before the Special Fund can be required to pay benefits toward the disease award. A similar result is found in *Newberg v. Chumley,* Ky., 824 S.W.2d 413 (1992). In *Chumley,* the Court discussed the time and manner in which the Special Fund must pay its obligation under a pneumoconiosis award. The Court noted:

Where both the Special Fund and the employer are liable ... the employer is liable for payment of the entire weekly benefit until the dollar amount of benefits paid is equal to the percentage of the total award for which the employer is liable. *Similar payment by the Special Fund is deferred until the employer's liability is extinguished.* Regardless of whether it might be beneficial to the claimant to do so, KRS 342.120 does not authorize an alternative manner of payment. (emphasis added).

824 S.W.2d at 416.

■ Although *Chumley* does not address what is sufficient to "extinguish" the liability of the employer, the Special Fund's claim

that recovery from the injury or discharge of the obligation in bankruptcy proceedings is sound. Consequently, evidence in the record of a discharge of the obligation in bankruptcy would be essential to compel payment by the Special Fund. Jent has failed to present such evidence. The order denying Jent protection from the automatic stay is not sufficient evidence that South East's liability on the injury and disease awards has been extinguished as it merely protects the debtor during the bankruptcy proceeding, and is not a discharge of the debt obligation itself. Hence, we reverse and remand.

■ Since this matter must be remanded for the taking of further proof, we feel it is important to comment on the Board taking judicial notice of the bankruptcy. On appeal to the Board, Jent moved to submit four documents: South East's bankruptcy petition; Jent's proof of claim; Jent's motion for relief from the automatic stay; and the order denying such relief. The Special Fund objected to the admission of the documents into the record, and noted that no other evidence existed upon which the Board could affirm the ALJ's order. As noted above, the Board took judicial notice of the contents of the bankruptcy petition and affirmed. On appeal to this Court, the Special Fund asserts that the Board acted improperly in taking notice of the petition.

KRE 201 provides, in part:

(a) *Scope of rule.* This rule governs only judicial notice of adjudicative facts.

(b) *Kinds of facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either:

(1) Generally known within the county from which the jurors are drawn, or, in a nonjury matter, the county in which the venue of the action is fixed; or

(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

. . . .

(f) *Time of taking notice.* Judicial notice may be taken at any stage of the proceeding.

*Lawson* notes that prior to the adoption of KRE 201, Kentucky had taken a conservative approach regarding the use of judicial notice as to court records. *Lawson, The Kentucky Evidence Law Handbook* § 1.00 at p. 8 (3rd ed., 1993) (cited hereinafter as *Lawson* ). Although a few exceptions were made, the general rule in Kentucky was that a court may take notice of a record in the same court in a case involving the same parties and the same issues, but not of other cases. *Maynard v. Allen,* 276 Ky. 485, 489, 124 S.W.2d 765, 767 (1939); *Lawson, supra.* However, *Lawson* suggests that KRE 201, 901 and 902 may allow for a more liberal approach to the use of judicial notice, possibly including the records of courts other than those of the sitting court. *Lawson* § 1.00 at p. 10.

The Special Fund's assertion that judicial notice is applicable only in the trial court appears to be without merit in light of KRE 201(f). *Lawson* notes that KRE 201(f) codifies a line of Kentucky cases which recognized the authority of an appellate body to take judicial notice of an appropriate fact. *Lawson* § 1.00 at pp. 12–13. (Citing *Parkrite Auto Park, Inc. v. Shea,* 314 Ky. 520, 235 S.W.2d 986 (1950), and *White v. Crouch,* 280 Ky. 637, 133 S.W.2d 753 (1939), as examples of such holdings). However, *Lawson* adds that the drafters of the rules suggested that notice should be used sparingly on appeal in cases where a party did not make a request for judicial notice before the trial court. Failure to do so could subvert the rules concerning preservation of error. In sum, the drafters suggested that an appellate court be permitted to take judicial notice to correct palpable error. *Lawson* § 1.00 at p. 13. (Citing Evidence Rules Study Committee, Kentucky Rules of Evidence, Final Draft, note 77 at 17 (Nov.1989)). However, in view of KRS 342.285(2), which specifically limits the role of the Board in receiving new or additional evidence only in regard to fraud or misconduct of some person engaged in the administration of Chapter 342 and affecting the order, ruling or award, we hold that the statute is controlling and the introduction of new or additional evidence is limited by KRS 342.285(2).

We reverse the Board and remand this matter to the Board for the purpose of remanding to the ALJ so the ALJ can take

additional proof on the issue of South East's bankruptcy and any discharge of its workers' compensation liability to Jent.

All concur.