Larry Dale SAMPLES, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 97–SC–015–MR.

Supreme Court of Kentucky.

Sept. 3, 1998.

As Modified on Denial of Rehearing
Dec. 17, 1998.

Daniel T. Goyette, Jefferson District Public Defender, Bruce P. Hackett, Frank Wm. Heft, Jr., Deputy Appellate Defender of the Jefferson District Public Defender, Louisville, KY, for appellant.

A.B. Chandler III, Attorney General, Samuel J. Floyd, Jr., Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, for appellee.

## OPINION OF THE COURT

Appellant was indicted for numerous sex crimes, all allegedly committed against his three step-children, C.D., M.N., and W.N. He was convicted in the Jefferson Circuit Court of sodomy in the first degree, sodomy in the second degree and sexual abuse in the first degree as to M.N. only. Appellant waived jury sentencing and was sentenced by the trial court to twenty-two years, ten years, and five years respectively, with all sentences to run concurrently. He appeals to this court as a matter of right. Ky. Const. § 110(2)(b).

Appellant's first claim of error pertains to the denial of his pretrial motion that he be provided with the addresses of all potential jurors in his case. Appellant noted that the addresses of all jurors summoned for jury duty had been "blacked out" on the juror qualification forms. The trial court denied the motion, stating on the record that the chief judge of the Jefferson Circuit Court, with the concurrence of the "general term" (a majority of the judges of the Jefferson Circuit Court), had decided to remove the addresses of those summoned for jury duty from the juror qualification forms and that this procedure had been approved by the Chief Justice of the Supreme Court. He further explained that this action had resulted from the objections of some jurors to furnishing their addresses to criminal defendants. The chief judge's decision, though apparently documented, was not memorialized by the adoption of a local rule or the entry of a formal order of record. The trial judge expressed his personal disagreement with the decision, but nevertheless denied the motion.

KRS 29A.070(7) provides:

The contents of juror qualification forms shall be made available to parties or their attorneys of record unless *the court* determines in any instance in the interest of justice that this information shall be kept confidential or its use limited in whole or in part. (Emphasis added.)

Appellant interprets this provision to vest in the trial judge the discretion whether to keep portions of the juror qualification forms confidential. He points out that the trial judge is not bound by administrative orders of the chief circuit judge which interfere with his discretionary powers. *Cf. Brutley v. Commonwealth*, Ky., 967 S.W.2d 20 (1998). However, Part II, § 7(7) of the Administrative Procedures of the Court of Justice (Ad. Proc.) provides as follows:

The contents of juror qualification forms shall be made available *to the trial judge and* to parties or their attorneys of record unless *the chief circuit judge or designee* determines in any instance in the interest of justice that the information shall be kept confidential or its use limited in whole or in part. (Emphasis added.)

Matters pertaining to jury selection and management are more inherently within

the authority of the courts than the legislature, and any conflict between a rule and a statute must be resolved by following the rule rather than the statute. *Williams v. Commonwealth*, Ky.App., 734 S.W.2d 810, 812 (1987); *Trent v. Commonwealth*, Ky. App., 606 S.W.2d 386 (1980). Regardless, we do not perceive any conflict between KRS 29A.070(7) and Ad.Proc. Part II § 7(7). The statute vests the discretion in the "court" and the rule clarifies that the "court" is the chief circuit judge or designee. The trial judge properly deferred to the authority of the chief circuit judge to redact the addresses of prospective jurors from the juror qualification forms.

■ Along the same lines, appellant argues that the chief circuit judge's order interferes with the trial judge's discretion to control the voir dire examination of jurors. RCr 9.38; *Woodford v. Commonwealth*, Ky., 376 S.W.2d 526, 527 (1964). The juror qualification form is a questionnaire filled out and submitted by all persons summoned for jury duty. Voir dire is the oral examination of the panel of prospective jurors chosen for a particular case. Appellant does not assert that he attempted to elicit the addresses of those prospective jurors during voir dire or that the trial judge denied him the right to do so. However, it appears from the abbreviated record with respect to this issue that the decision of the chief circuit judge applies only to juror qualification forms and does not purport to limit the scope of voir dire.

■ Alternatively, appellant argues the reverse side of the coin, *viz:* since the document allegedly requiring redaction of addresses from the juror qualification forms is not in the record, there is no proof that it actually exists; *ergo*, the trial judge exceeded his authority in denying the motion that the addresses be furnished. While an appellate court can take judicial notice of noticeable facts, KRE 201(f), *Parkrite Auto Park, Inc. v. Shea*, Ky., 314 Ky. 520, 235 S.W.2d 986 (1950), *Newberg v. Jent*, Ky.App., 867 S.W.2d 207 (1993), we agree that it would be inappropriate for us to take judicial notice of an unrecorded document which is not included in the record under review, *compare* KRE 201(d), and, therefore, cannot be authenticat-

ed. However, the trial judge, who purported to be personally aware of the existence, authenticity and content of the document in question, clearly did take judicial notice thereof during his explanation in open court of his reasons for overruling appellant's pretrial motion. Appellant registered no contemporaneous objection to the taking of judicial notice of the document by the trial judge and is precluded from raising the issue for the first time on appeal. RCr 9.22; *Edwards v. Hurtel*, 724 F.2d 689 (8th Cir.1984); *People v. Bryant*, 43 Mich.App. 659, 204 N.W.2d 746 (Mich.App.1972); *Turner v. State*, 733 S.W.2d 218 (Tex.Ct.Crim.App.1987); *State v. Doria*, 135 Vt. 341, 376 A.2d 751 (Vt.1977).

■ During voir dire, the prosecutor told prospective jurors that appellant faced a penalty range of one day to life in prison. Appellant objected because the minimum penalty for the charges in the indictment was one year, not one day. The trial court overruled the objection, concluding that with the potential for instructions on lesser included offenses, the prosecutor's statement was not a misrepresentation of the possible range of punishments.

Appellant contends that the trial court's ruling was improper based upon the holding in *Shields v. Commonwealth*, Ky., 812 S.W.2d 152, *cert. denied*, 502 U.S. 1065, 112 S.Ct. 953, 117 L.Ed.2d 121 (1992). In *Shields*, the defendant was charged with being a PFO and, as a result, faced an enhanced penalty of 20 years to life. His trial attorney asked to question the prospective jurors on the penalty range for the underlying offense (10 to 20 years), and the trial court denied his request. This Court upheld the denial, stating that, by reason of the PFO count, 10 to 20 years "was not the correct permissible range of punishment." *Id.* at 153. In its holding, the Court stated, "[i]n order to be qualified to sit as a juror in a criminal case, a member of the venire must be able to consider any permissible punishment." *Id.*

*Shields* is distinguishable from the case at bar because it involved an attempt to ask prospective jurors about an impermissible penalty range. Here, the prosecutor told the

jurors of a possible minimum penalty, and indeed the jury was ultimately instructed on the misdemeanor offense of second degree unlawful imprisonment. While the voir dire question bordered on exaggeration and tended toward trivialization, there was no direct misrepresentation of the permissible range of punishment. There was no *Shields* violation and the trial court's denial of appellant's motion was proper.

■ At trial, when W.N. was testifying about a time when he was sodomized, the following exchange occurred:

Prosecutor: At some point in time did the defendant and your mother separate?

W.N.: Yes, Ma'am. There was—

Defense Counsel: Objection.

Judge: Overruled.

Prosecutor: At some point in time did they separate?

W.N.: Yes.

Prosecutor: Okay.

W.N.: It was over with my sisters. He was made to stay in Bullitt County— .

Defense Counsel: Objection.

Prosecutor: Okay, not why, but how long was he gone?

W.N.: It was about, I'd probably say about thirty days—

Appellant again objected, claiming that W.N.'s comments could cause the jury to draw an improper inference that a court had ordered appellant out of the home. The trial court overruled the objection. Appellant moved for a mistrial, and the trial court denied the motion.

Appellant contends that W.N.'s testimony included evidence of bad character and was improperly admitted. The threshold issue is whether W.N.'s comment actually constitutes evidence of bad character. An analysis of the record indicates that W.N.'s comment was interrupted, incomplete, and did not mention any specific misconduct. It also did not refer to courts or court orders. Additionally, there is no indication in the record that the challenged testimony was introduced to prove bad character. Thus, W.N.'s testimony does not amount to character evidence as contemplated by KRE 404.

■ Later in the trial, appellant introduced testimony by a social worker, Lisa McCue, that several of M.N.'s and C.D.'s allegations against appellant were not recorded in CHR reports. The purpose of this testimony was to attack the credibility of the alleged victims on grounds of recent fabrication. On cross examination, the prosecutor asked McCue if she had interviewed appellant during her investigation, and McCue stated that she had done so. The prosecutor then asked McCue if appellant had threatened her, and appellant objected. The objection was overruled, and McCue testified, "[appellant] had stated that if anyone removed his kids that he would kill 'em." Appellant contends that McCue's testimony included evidence of bad character and should not have been admitted in evidence. The Commonwealth contends that McCue's comment was properly admitted because it corroborated the victims' testimony that appellant made death threats against them and other family members.

■ The general rule of rehabilitation is that when "a witness has been impeached, the party introducing him may introduce evidence to corroborate his testimony or support his credibility." *Tucker v. Commonwealth*, Ky., 916 S.W.2d 181, 184 (1996) (citing *Sallee v. Ashlock*, Ky., 438 S.W.2d 538, 542 (1969)). Furthermore, when an appellant pursues a theory that criminal allegations are manufactured and promotes that theory by an attack on the victim's credibility, then evidence may be admitted to corroborate the victim's testimony. *Schambon v. Commonwealth*, Ky., 821 S.W.2d 804, 811 (1991) (citing *Reed v. Commonwealth*, Ky., 738 S.W.2d 818 (1987)).

Appellant's stated theory of the case was that the victims' stories were "riddled with holes, with inconsistencies, and in some cases with outright lies" and that appellant "did none of the things they said he did." One of the things the victims claimed that appellant did was to threaten their lives and the lives

 

of others in order to prevent them from telling anyone that appellant had forced them to engage in sexual activity with him. Since appellant's threat to the social worker tended to support the victims' credibility regarding appellant's death threats, the admission of McCue's statement was within the trial court's discretion.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All concur.