**Mary Montgomery GUTHRIE, Appellant,**

**v.**

**Chilton GUTHRIE, Appellee.**

Court of Appeals of Kentucky.

June 7, 1968.

A. Henry Ralston, Denham, Ralston & Nagle, Middlesboro, for appellant.

Paris Swinford, Pineville, for appellee.

CULLEN, Commissioner.

Mary Guthrie, divorced wife of Chilton Guthrie, obtained a judgment against Chilton in the amount of $10,580.73 for allegedly delinquent child support payments and house repair costs required under the divorce judgment to be paid by Chilton, and for interest on the delinquent amounts. On motion by Chilton the judgment was set aside and a new judgment was entered declaring that Chilton was not indebted to Mary in any sum. Mary has appealed from the latter judgment.

At the time of the divorce in June 1955, the parties had five minor children. The judgment directed that Chilton "pay unto the plaintiff the sum of Two Hundred Fifty Dollars ($250.00) each and every month hereafter for the support and maintenance of the five children, until further orders of the Court." The judgment further awarded occupancy of the parties' dwelling house to Mary and directed that Chilton "keep in reasonable repair the house in which the plaintiff and infant children now reside until the youngest of said children shall have reached his majority."

From the date of the divorce through March 1964 Chilton paid only $200 each month for child support, except that in January 1956, January 1957, September 1957 and December 1957 he paid $400, and in December 1958 he paid $600. From April 1964 through July 1965 he paid the $250 per month fixed by the judgment. As of the end of July 1965 he had failed by $4,300 to pay the designated amount of $250 per month.

During the period above mentioned Mary allegedly expended $1,939.04 for house repair costs which Chilton had failed to meet.

On August 7, 1965, Mary filed a motion seeking judgment against Chilton for the delinquent child support payments, with interest, and for the repair expenditures, with interest. She computed this sum to be $10,580.73. (Later in the proceedings she conceded that this was an erroneous calculation and was around $1,000 too high.) Notice of motion was served by mail on the *attorney* (a resident of Tennessee) *who had represented Chilton at the time of the original divorce proceedings in 1955*. No appearance was made for Chilton and judgment was entered as by default for the sum claimed by Mary, on August 16, 1965.

Shortly thereafter Chilton appeared by Kentucky counsel and moved to set the judgment aside, asserting that he had a good defense. Accompanying the motion was the affidavit of the Tennessee attorney that he had not represented Chilton since the rendition of the original divorce judgment and that he did not know his whereabouts when he received notice of Mary's motion of August 7, 1965, which notice he did not receive until the day set for the hearing. As hereinbefore stated, the trial court granted Chilton's motion to set aside the default judgment, and permitted him to make defense.

Chilton's first defense was that the child support obligation should be considered to have been reduced by $50 per month as each child reached majority, so he was obligated to pay $250 per month only until the oldest child reached majority in March 1961, $200 per month thereafter until July 1962 when the second child reached majority, $150 per month thereafter until June 11, 1964 when the third and fourth children (twins) reached their majorities, and only $50 thereafter until the youngest child should reach his majority in February 1966. On this theory Chilton had *overpaid* for the equivalent of 62 months, which would offset the initial 62 or 63 months for which he had underpaid.

Chilton's second defense was that he should be given credit for some $3,900 in laundry bills he had paid for Mary and the children over the 10-year period since the divorce.

The third defense was that Mary's only remedy for failure of Chilton to keep the

house in repair was to obtain a court order compelling compliance by him, and that she could not simply pay for the repairs herself and then recover from him by motion in the divorce action.

The trial court, applying the broad brush of equity, held that any sums to which Mary might be entitled by reason of Chilton's initial underpayment of child support and his failure to keep the house in repair were more than offset by the overpayment of child support after the second child came of age, and by the laundry payments. Accordingly, the court held that Chilton was not indebted to Mary in any amount. (The judgment, which was entered in August 1966, further held that Chilton's obligation for any child support terminated when the youngest child reached majority in February 1966, and that Mary should surrender possession of the house. Mary does not complain of those two features of the judgment.)

On the appeal Mary contends that she was entitled to the full $250 per month for child support until the youngest child came of age, and to interest on the delinquencies; that she was entitled to the amount claimed by her for house repair costs with interest; and that Chilton is entitled to no credit for the laundry payments. She further contends, as to procedure, that the service of notice on the Tennessee attorney was valid, so as to require Chilton to conform with the requirements of CR 60.02 in order to obtain relief from the default judgment; that he failed to comply with CR 60.02 in that in his motion to vacate the judgment he did not set forth with particularity the elements of a valid defense; wherefore the trial court erred in setting aside the judgment and entertaining the defense.

■ We shall first consider the procedural question. We think it is sufficient to say that the provision of CR 5.02 requiring that service of a motion be made upon the attorney of a party "represented by an attorney" clearly contemplates *currency* and *continuity* of litigation and representation. It is our opinion that in a divorce case representation by attorney is not to be deemed to have continued for the purpose of service in connection with proceedings for modification of the judgment upon a change of conditions, after the case otherwise has been finally concluded.

■ It is our opinion that the service upon the attorney in the instant case was not valid, wherefore the motion to set aside the purported default judgment was adequate in simply alleging the invalidity of the service.

We now consider the question of whether the obligation of Chilton to pay child support automatically was reduced by $50 as each child reached majority.

Chilton's contention, substantially accepted by the trial court, was that the divorce judgment in effect provided for a payment of $50 per child, and since a person ceases to be a "child" upon reaching majority the payment for each child terminated when he or she reached majority. We may observe that this is in the nature of a retrospective contention because it never was advanced by Chilton before the instant proceeding for delinquency was instituted by Mary. Chilton does not suggest that there was any agreement or understanding between Mary and him for a reduction of payments as each child came of age, nor could he with good grace so suggest, because he paid only $200 per month during the first five years after the divorce when under his own contention he owed $250; he continued to pay $200 per month for most of the period after the second, third and fourth children came of age, when under his contention the payments should have dropped to $150 and then to $50; and for some unexplained reason during the nine months immediately preceding the filing by Mary of the motion for delinquency recovery he upped his payments to $250 per month.

In our opinion, Chilton's contention is *not acceptable because it is by no means* clear from the judgment that the allowance was a separable $50 for each child. On the face of the judgment the allowance was $250 per month for the family group. Perhaps the judgment contemplated that a *base* amount would be required regardless of the number of children, and some undetermined amount for each child in addition to one was included in the $250 sum. Or perhaps the judgment was made in recognition of the fact that $250 was not enough to support five children but was all the father *was able* to pay; in that case there would have been no intent that the payments drop off as the children respectively came of age, but the intent would have been that the payments continue to provide a better standard of living for the remaining children.

At the best the judgment is ambiguous. It says that Chilton shall pay $250 per month *until further orders of the court.* It is true that the *purpose* of the payments is "for the support and maintenance of the five children" but on its face it does not say that the payment is on a per-child basis.

The judgment being ambiguous, we think it was incumbent upon Chilton, if he claimed a construction that would reduce the payments which admittedly he was required to pay during the first five years following the entry of the judgment, to seek an order modifying or clarifying the judgment, rather than waiting until the disputed payments all had accrued and then seeking a retrospective construction of the judgment. A *modification* of a judgment for child support can operate only prospectively and cannot exonerate the liability for accrued payments. Waters v. Waters, Ky., 251 S.W.2d 580; Williams v. West, Ky., 258 S.W.2d 468; Bailey v. Bailey, Ky., 294 S.W.2d 942; Montgomery v. Montgomery, Ky., 309 S.W.2d 188. In our opinion a clarification or construction should fall in the same category as a modification, if there is a genuine ambiguity in the judgment.

As a matter of policy it is better that questions as to the construction or application of judgments for child support be disposed of by application to the court *in advance* rather than by litigation in retrospect. Controversies as a result of out-of-court modifications and negotiations are to be discouraged. Cf. Story v. Story, Ky., 423 S.W.2d 907.

It is our conclusion that Chilton is obligated for the amount by which his child support payments failed to meet $250 per month for the entire period from the date of the divorce judgment to the coming of age of the youngest child. We understand that this amounts to $4,300.

As concerns Mary's claim for home-repair expenditures, it is our conclusion that she is entitled to recover such of the expenditures as properly may be classed as *house repairs.* (This would not include such things as television parts or service, purchase of furnishings, repair of household appliances, etc.) The obligation imposed upon Chilton by the judgment to "keep the house in repair" was not such a one as reasonably and practicably could have been enforced by constant applications to the court for rules or orders. Particularly is this so because home-repair necessities often fall into the emergency category, such as frozen water pipes, broken windows, etc. Morgan v. Morgan, Ky., 349 S.W.2d 194, is authority for recovery by Mary of the amount expended by her for reasonable and necessary repairs.

We come now to the question of *interest,* both as to the child support payments and as to the repair expenditures. The rule appears to be that interest should be allowed on such items in the absence of factors making it inequitable. 24 Am.Jur.2d, Divorce and Separation, sec. 720, p. 825; Annotation, 33 A.L.R.2d 1455.

It is our opinion that the equities arising from Chilton's having paid for child support substantially the full amount which the judgment *may have* intended he should pay, and from his voluntary payment of several thousand dollars for laundry service for Mary and the children, are such as should relieve him of paying interest, and we so hold.

■ There remains the question of whether Chilton is entitled to any credit or offset for the laundry payments. Admittedly he made them voluntarily and there was no agreement or understanding that the payments would operate as credit on the child support obligation. Under those circumstances he is not entitled to credit. See Williams v. West, Ky., 258 S.W.2d 468; Tucker v. Tucker, Ky., 398 S.W.2d 238.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

WILLIAMS, C. J., and HILL, MILLI-KEN, MONTGOMERY, PALMORE and STEINFELD, JJ., concur.