Carroll Gene LYNCH, Appellant,

v.

COMMONWEALTH of Kentucky,
Appellee.

Court of Appeals of Kentucky.

Aug. 22, 1980.

Rehearing Denied Nov. 7, 1980.

Discretionary Review Denied
Feb. 13, 1981.

Jack Emory Farley, Public Advocate, J. Vincent Aprile, II, Asst. Deputy Public Advocate, Frankfort, for appellant.

Steven L. Beshear, Atty. Gen., Martin Glazer, Asst. Atty. Gen., Frankfort, for appellee.

Before WHITE, WILHOIT and WINTERSHEIMER, JJ.

WHITE, Judge.

This appeal is taken from the denial by the Jefferson Circuit Court of appellant's RCr 11.42 motion. Under such he sought relief from the sentence imposed following his 1972 guilty plea against counts of operating a motor vehicle without the owner's consent and of robbery involving the use or display of a deadly weapon.

Lynch received two years on the first charge and fifteen years, suspended on condition of good behavior for five years after release, on the second. In 1973 probation was revoked based on his arrest in Nashville in connection with a Bowling Green bank robbery. At that time the fifteen-year sentence from 1972 was imposed.

Appellant raises five issues on appeal:

(1) that appellant's 1972 guilty pleas were entered without the trial court's having established that such were made knowingly, intelligently, and voluntarily, and thus in violation of *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969);

(2) that appellant was not placed under oath before making his guilty pleas;

(3) that the court below did not make mandatory findings of material issues of fact in rejecting the 11.42 motion;

(4) that the probated sentence was revoked without due process in contravention of *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); and

(5) that appellant was denied counsel at the revocation proceeding in violation of the discretion regarding such imparted to the trial judge under *Gagnon v. Scarpelli, supra.*

At the time that Lynch entered his guilty pleas, the exchange with the bench was extremely limited. After reference was made by the court and defense attorney to the terms of the sentence, appellant was asked if he understood. He responded, "Yes, sir." He then was asked if he was changing his plea and pleading guilty to the two counts. Again he responded, "Yes, sir." Such reflected the scope of inquiry into whether the plea was being made knowingly, intelligently, and voluntarily as mandated by *Boykin*.

Appellant has cited innumerable federal and state cases together with varied learned treatises in support of the *Boykin* decision. Indeed, fourteen pages of his brief are directed to explaining the significance and application of that holding to this Court. In 1972 when appellant faced sentencing, most trial judges were unfamiliar with its strict requirements. These shadows on their knowledge no longer exist. The impact and ramifications of *Boykin* have been felt and developed over eleven years. Such an elaborate elucidation as was presented herein is, therefore, hardly necessary in order for this Court to appreciate its significance.

■ *Boykin* requires that the trial court must establish that a defendant's guilty plea is being entered knowingly, intelligently, and voluntarily before accepting same.

■ In *Hartsock v. Commonwealth*, Ky., 505 S.W.2d 172 (1974), a distinction was made between those instances in which the record is entirely silent and those in which it is not altogether silent regarding the voluntariness of the entry of a guilty plea. Were the record silent, a new trial would be the proper recourse. However, when the record contains *some* indicia of understanding on the part of the accused, the correct path is to remand for an evidentiary hearing on the issue. Based on the outcome of that hearing, either the plea stands or the judgment is reversed with instructions for a new trial.

■ The appropriateness of a subsequent evidentiary hearing was upheld in *Kotas v. Commonwealth*, Ky., 565 S.W.2d 445 (1978). *Boykin* mandates that the record must show, or there must be an allegation and evidence relating to, the voluntariness issue. *Kotas* interpreted "allegation and evidence" to be an affirmative directive for an evidentiary hearing.

■ In 1978 such a hearing was held for Mr. Lynch. Three witnesses testified: appellant's 1972 attorney, appellant himself, and a deputy clerk of the Jefferson Circuit Court. At its conclusion the court found that Lynch's guilty plea had been entered in 1972 knowingly, voluntarily, and intelligently. We are not inclined to disagree. In assessing whether the constitutional rights of the defendant were breached, pertinent factors are the totality of the circumstances including the background, experience, and conduct of the accused. *See Brady v. U. S.*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970), and *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938).

Appellant's former counsel testified that although he did not discuss the full implications of probation with appellant, he believed from his client's demeanor that he was aware of its ramifications and was certain that Lynch was cognizant of his right to trial. In contrast appellant's testimony indicated that he was unaware of his right to remain silent and of the court's willingness to appoint counsel and call his witnesses. Rather he alleged that although he knew of his right to trial, he felt that without counsel of his choice, as opposed to appointed counsel, and without the financial ability to gather himself his witnesses, the proceeding would be unfair. Therefore, he chose instead to plead guilty.

In considering the totality of the circumstances, as previously noted, it is permissible to take notice of appellant's background and experience. He is no newcomer to our system of criminal justice but rather has established such a continuous relationship with it that he is subject to penalty as an habitual criminal. Indeed, his experience with his present case alone by necessity establishes certain familiarity:

The indictment upon which he was charged was issued in 1969. He was convicted by a jury; however, this was reversed in 1971 with directions for a new trial. It was in preparation for this second trial in 1972 that Lynch entered the guilty pleas now under consideration. While on probation from these convictions a motion to revoke was heard, and in 1973 the suspended sentence was imposed. Five years later appellant asserts that the 1972 pleas were involuntary.

█ This Court is not to act *de novo* in determining the question of voluntariness. Rather it is to review the record before it to ascertain whether the court below acted erroneously in denying that appellant's pleas were made involuntarily. Considering all the pertinent factors relating to Lynch's previous exposures to our legal procedures and the inferences which must arise from his acceptance of the Commonwealth's certain offer of probation for his guilty pleas in lieu of the unknown verdict and sentence which could result from a second jury trial, we are unable to state that the findings of the evidentiary hearing were in error and that the court below acted erroneously in relying upon same to deny appellant's 11.42 motion.

Appellant raises the question of whether it is necessary that one be placed under oath before entering a plea. In support of his argument appellant refers us to federal cases from without our circuit. These merely reflect determinations which have been made in other jurisdictions and carry no persuasive authority to influence the state courts of this Commonwealth.

RCr 8.08, which implements the *Boykin* decision, requires that the court determine that "the plea is made voluntarily [and] with understanding of the nature of the charge." No interpretation by a court of this state has been presented to include therein the requirement for being sworn before entering such a plea, and we decline to so hold.

█ Appellant next suggests that reversal is required for failure of the lower court to have made findings of material issues of fact as mandated by RCr 11.42(6). We find *Blankenship v. Commonwealth*, Ky.App., 554 S.W.2d 898 (1977), to be dispositive of the issue. In that case at 903 the Court noted:

Under RCr 11.42(6) a trial court conducting a hearing to vacate sentence must make findings on all material issues of fact. Such findings are required if there is to be meaningful appellate review. ... However, the trial court's failure to do so does not constitute reversible error.

There was no specific request by Blankenship for a finding on that issue as required by CR 52.04, which we conclude is applicable to proceedings under RCr 11.42. See, RCr 13.04; *Hord v. Commonwealth*, Ky., 450 S.W.2d 530 (1970).

█ Appellant urges in the event that his *Boykin* argument is rejected, he should be granted a new revocation hearing for failure to have been accorded his due process rights under *Scarpelli, supra*. Appellee's response rejects the availability of an RCr 11.42 motion as a permissible means of challenging a post-conviction proceeding such as revocation of probation. Under today's statutory authority, the Commonwealth continues, a direct appeal from such revocation would be appropriate; however, under the law in effect during the 1973 proceedings it is urged that mandamus or prohibition were the available recourses.

Appellant replies that as a direct appeal from a final order revoking or modifying the sentence was not constitutionally available until the implementation of the Judicial Article on January 1, 1976, his *only* available procedure for challenging the probation revocation order was a motion to vacate collaterally pursuant to RCr 11.42. We cannot agree with the position of either party on this issue.

The Judicial Article did extend a *constitutional* right of appeal; however, prior to this, *statutory* and *case law* had already established this opportunity. *See* KRS 21.140(1) (since repealed) and *Commonwealth v. Hardin*, Ky., 317 S.W.2d 498 (1958). In *Hardin* certification was sought concerning whether a defendant was entitled to bond pending appeal from his revocation of probation order. The Commonwealth argued that bond applies only to appeals from judgments on conviction and that an appeal from a revocation order is not such a judgment. The Court nevertheless held at 499:

There is no judgment on conviction more final and definite than an order revoking probation *and* directing execution under the conviction. The appeal is from a judgment on conviction, not predicated however upon grounds generally alleged

for reversal. The appellant asserts only one ground for reversal. He charges that the court erred in revoking the probation. What is the purpose of an appeal in any criminal case? It is to avoid the consequences of conviction. So it is with this appeal. It differs from other appeals, only as to grounds presented for reversal and the manner of presentation, not in purpose. (Emphasis added.)

Thus, in 1973 an appeal, subjecting the facts and the law to review, was available. However, in the case before us, appellant did not seek a review of that judgment; rather, he averred that the judgment was void for constitutional defects. For this his recourse properly was the RCr 11.42 motion:

> RCr 11.42 does not authorize relief from a judgment of conviction for mere errors of the trial court. In order for the rule to be invoked there must be a violation of a constitutional right, a lack of jurisdiction, or such violation of a statute as to make the judgment void and therefore subject to collateral attack. *Tipton v. Commonwealth*, Ky., 376 S.W.2d 290 (1964).

██ On September 7, 1978, a hearing was held on appellant's *pro se* 11.42 motion in which questions regarding the entry of his guilty plea as measured against the requirements of *Boykin* were raised. The transcript from that proceeding reveals that the propriety of the revocation hearing in light of *Scarpelli* was also raised in issue and heard by consent as permitted under CR 15.02 (made applicable to criminal proceedings under RCr 13.04.) The following day the record was supplemented by appellant's appointed counsel through the formal, albeit unnecessary, filing of a motion to cover this point.

Upon issuing its order denying relief under the 11.42, the lower court addressed itself only to the *Boykin* situation; no mention was made of the *Scarpelli* issue. In reviewing the determination of that court, we rely on RCr 9.26 which permits this

Court to reverse on appeal a judgment of conviction "when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced." We feel that this is such a case.

In extending the procedural due process rights accorded to parole revocations under *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), to probation revocations in *Gagnon v. Scarpelli, supra*, the Supreme Court listed as its initial point of inquiry the question of notice. It is that critical element of notice which we find to have been lacking in appellant's revocation proceeding and which compels that a new hearing be held.

CR 5.01 (reached through RCr 13.04) mandates that "... every written notice ... shall be served upon each party "...." CR 5.02 continues by noting that "[w]henever under these Rules service is required or permitted to be made upon a party represented by an attorney, ... the service shall be made upon the attorney ...."

The record certifies that service of notice concerning the probation revocation hearing was made upon appellant's counsel from the 1972 trial and conviction. No written notice was served upon appellant Lynch himself.

We do not believe that such service sufficiently complied with the requirements of notice to have satisfied the mandate of *Scarpelli*. In *Guthrie v. Guthrie*, Ky., 429 S.W.2d 32, 35 (1968), the Court observed:

> We think it is sufficient to say that the provision of CR 5.02 requiring that service of a motion be made upon the attorney of a party 'represented by an attorney' clearly contemplates *currency* and *continuity* of litigation and representation.

In that case representation was not deemed to have continued for purposes of service in a modification proceeding after the litigation had otherwise been finally concluded. Clearly, if modification is not

considered sufficiently continuous with a dissolution proceeding to support service upon the attorney, revocation of probation is equally remote from the original conviction. Thus, CR 5.01, requiring service upon the party himself, applies, making void any attempted service on the attorney under CR 5.02. Without service there can be no notice; without notice there can be no compliance with one's constitutional rights of due process.

With regard to the revocation hearing, appellant also asserts that he was denied his federal constitutional right to counsel. We acknowledge that under a case-by-case determination, such a *federal* right does exist; however, as yet such has not been extended to create a *mandate* upon the states. *See Reeder v. Commonwealth*, Ky., 507 S.W.2d 491 (1973). This is not to say that benefit of counsel would be denied or inappropriate at such hearings; rather it is merely to affirm that such is not mandatory.

For the aforementioned reasoning that portion of the Jefferson Circuit Court's denial of appellant's RCr 11.42 motion relating to the *Boykin* considerations is affirmed. To the extent, however, that the lower court denied appellant's motion for a new revocation hearing, that order is reversed and remanded to the Jefferson Circuit Court with instructions to enter an order sustaining the motion to vacate the judgment of 1973 and to grant a constitutionally safeguarded revocation hearing.

All concur.