**Stephon HARBIN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Nos. 2000–SC–0730–MR, 2001–SC–0177–TG.

Supreme Court of Kentucky.

Aug. 21, 2003.

Order Granting Petition for Modification in Part and Denying in Part Dec. 18, 2003.

Shelly R. Fears, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler III, Attorney General, Perry Ryan, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice GRAVES.

Appellant, Stephon Harbin, was convicted in the Jefferson Circuit Court of first-degree trafficking in a controlled substance (cocaine), three counts of first-degree wanton endangerment, attempting to elude police, resisting arrest, and of being a first-degree persistent felony offender. He was sentenced to a total of twenty years imprisonment and appeals to this Court as a matter of right. In addition, Appellant appeals from the circuit court's final order of forfeiture. We affirm the convictions but reverse and remand for a hearing on the forfeiture issue.

On the evening of October 27, 1998, Officer Larry Seelye observed Appellant, Stephon Harbin, and co-defendant, Eric Henderson, sitting in a blue minivan on the corner of Nineteenth and Broadway in Louisville. Officer Seelye testified that Appellant, who was in the driver's seat, was holding a bag of cocaine and talking to a third male who was standing outside of the van. The third person took the bag, looked at it, and returned it to Appellant. The man then walked away and Appellant drove off. When officers activated their emergency lights and sirens, Appellant accelerated and attempted to evade police. Officer Seelye stated that the ensuing vehicle chase reached speeds of 70–80 mph down Broadway. Eventually, Appellant lost control of his van and struck a tree in the Chickasaw Park area. Appellant exited the vehicle and ran toward a residential area where he was apprehended by other officers. Officer Kenton Buckner testified that he saw Appellant throw a gun during

the pursuit. A search the next day located a gun in the area, although no fingerprints were found on it.

When Appellant's van was searched, a bag of powder cocaine, $6,500 in cash, and some baggies on the passenger side floorboard were found. Appellant was subsequently indicted for: (1) first-degree trafficking in a controlled substance (cocaine); (2) possession of a firearm by a convicted felon; (3) first-degree wanton endangerment (three counts); (4) resisting arrest; (5) possession of a defaced firearm; (6) attempting to elude police; and (7) third-degree criminal trespass. During the August 1999 trial, Appellant received a directed verdict on the criminal trespass charge. The jury subsequently found him guilty of trafficking, wanton endangerment, resisting arrest, and attempting to elude police. Appellant thereafter pled guilty to being a first-degree persistent felony offender.

On October 18, 1999, pursuant to a plea agreement, Appellant was sentenced to twenty years imprisonment, the minimum permissible sentence under KRS 532.080(6)(a). Also, the prosecutor agreed to drop the charge of possession of a handgun by a convicted felon. On November 1, 1999, the trial court ordered that Appellant may proceed In Forma Pauperis and that the Department of Public Advocacy provide counsel.

On November 17, 1999, the Commonwealth moved to forfeit Appellant's minivan, the $6,500 found therein, and the gun that was apparently dropped during the pursuit. The Commonwealth's motion was noticed only to the attorney who Appellant had retained to represent him at trial, Steve Schroering. The Commonwealth's motion was heard during the November 29, 1999, motion hour before a judge other than Judge Shake (who had presided over all of Appellant's previous proceedings).

Neither Appellant nor DPA was present. The trial court granted the forfeiture motion. Apparently, a copy of the signed forfeiture order was never sent to Appellant, DPA, or even Schroering. After learning of the order some fifteen days after its entry, Appellant filed a *pro se* motion under CR 59.05 to alter, amend, or vacate the judgment. On January 31, 2000, Judge Shake rendered an opinion and order denying the motion on the grounds that the court no longer had jurisdiction of the case. Appellant now appeals to this Court as a matter of right.

### I.

■ Appellant contends that the trial court impermissibly limited his voir dire by ruling that he could only inform the jury panel that the possible range of penalties was "one day to life," without any further explanation. Appellant claims the panel was misled by information that the penalty range was anywhere from one day to life in prison without delineating the specific offenses and the penalty range carried by each offense.

At the time of Appellant's trial, the controlling cases on this issue were *Samples v. Commonwealth*, Ky., 983 S.W.2d 151 (1998) and *Shields v. Commonwealth*, Ky., 812 S.W.2d 152 (1991), *cert. denied*, 502 U.S. 1065, 112 S.Ct. 953, 117 L.Ed.2d 121 (1992), which permitted the jury to be informed of the entire sentencing range, including the sentences for any lesser-included offenses. Subsequently, this Court rendered the decision in *Lawson v. Commonwealth*, Ky., 53 S.W.3d 534, 544 (2001), wherein we stated:

> In all non-capital criminal cases where a party or the trial court wishes to voir dire the jury panel regarding its ability to consider the full range of penalties for each indicated offense, the questioner should define the penalty range in terms

of the possible minimum and maximum sentences for each class offense ...

*Lawson* overruled *Samples* and *Shields* to the extent they held otherwise. Thus, contrary to the Commonwealth's position and the trial court's ruling, defense counsel should have been permitted to inform the jury panel of the specific penalty range for each charged offense.

■ Notwithstanding, Appellant entered a guilty plea on the PFO charge and was sentenced to the minimum of twenty years. As this Court explained in *Lawson, supra,* the purpose of allowing sentencing information to go to the jury is "to assess [its ability] to consider the range of permissible penalties *in the event the trial proceed[s] to a sentencing phase." Id.* at 541 (emphasis added). Given Appellant's plea of guilt to the PFO charge and the imposition of the minimum possible twenty year sentence, any error must be deemed harmless.

### II.

■ Appellant next contends that the trial court erred in admitting "highly prejudicial testimony regarding a photograph of a nude woman lying on a bed surrounded by large amounts of cash." The photograph itself was excluded on the grounds that any probative value was outweighed by its prejudicial effect. However, the trial court ruled that if Appellant "opened the door," the Commonwealth would be permitted to question him concerning the contents of the photograph.

After Appellant testified on direct examination that the $6,500 found in the minivan had come from various legal sources, the Commonwealth again moved to admit the photograph. Apparently concerned that the trial court would reverse its earlier ruling, defense counsel agreed to the Commonwealth's questioning Appellant about the large amount of money that was

depicted in the photograph. No further objection was raised.

We are of the opinion that the photograph, or at least its contents, was arguably relevant in light of Appellant's explanation for the source of the money. Further, while it may be questionable whether Appellant did, in fact, "open the door" by claiming the money was legitimately obtained, the issue is rendered moot in light of his concession to the prosecutor's questioning. This failure to object must be viewed as a trial strategy which is not reviewable on appeal. *Salisbury v. Commonwealth,* Ky.App., 556 S.W.2d 922 (1977). Therefore, error, if any, was harmless.

### III.

■ Appellant argues that his Due Process rights were violated when his vehicle and the $6,500 found therein were forfeited without notice and an opportunity for a hearing. We agree.

The statutes pertaining to forfeiture are KRS 218A.410 and KRS 218A.460. Pursuant to KRS 218A.410, property subject to forfeiture includes "vehicles ... which are used, or intended for use, to transport or in any manner to facilitate the transportation, for the purpose of sale or receipt" of controlled substances and equipment used in the manufacture of such, and "all proceeds ... traceable to the exchange, and all moneys ... used or intended to be used, to facilitate any violation of this chapter[.]" KRS 218A.410(1)(h) and (j). However, subsection (j) further provides:

It shall be a rebuttable presumption that all moneys, coin, and currency found in close proximity to controlled substances, to drug manufacturing or distributing paraphernalia, or to records of the importation, manufacture, or distribution of controlled substances, are presumed

to be forfeited under this paragraph. The burden of proof shall be upon claimants of personal property to rebut this presumption by clear and convincing evidence. The burden of proof shall be upon the law enforcement agency to prove by clear and convincing evidence that all real property is forfeitable under this paragraph.

In addition, KRS 218A.460, which concerns the application of the forfeiture procedures, states, in pertinent part:

(2) Following conviction of a defendant for any violation of this chapter, the court shall conduct an ancillary hearing to forfeit property if requested by any party other than the defendant or the Commonwealth. The Commonwealth's attorney, or the county attorney if the proceeding is in District Court, shall initiate the hearing by filing a motion requesting entry of a final order of forfeiture upon proof that the property was being used in violation of the provisions of this chapter. The final order of forfeiture by the court shall perfect in the Commonwealth or appropriate law enforcement agency, as provided in KRS 218A.435, right, title, and interest in and to the property. The Commonwealth may transfer any real property so forfeited by deed of general warranty.

. . .

(4) Unless otherwise expressed in KRS 218A.410, the burden shall be upon claimant to property to prove by preponderance of the evidence that it is not subject to forfeiture.

Appellant first argues that the Fourteenth Amendment to the United States Constitution requires that he be given notice and an opportunity for a hearing before his property is forfeited, and to the extent that KRS 218A.460(2) does not require such, it should be held unconstitutional. Notably, in her January 31, 2000,

order, Judge Shake noted that KRS 218A.460 "does not require an evidentiary hearing for all forfeitures and certainly not at the request of a convicted defendant."

The Fourteenth Amendment to the United States Constitution provides that no state shall deprive any person of life, liberty, or property without due process of law. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Robinson v. Hanrahan*, 409 U.S. 38, 39–40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972) (*quoting Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). In *Fuentes v. Shevin*, 407 U.S. 67, 80, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972), the United States Supreme Court stated, "For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified."

Unlike statutory schemes from other jurisdictions, Kentucky's Controlled Substances Act, KRS Chapter 218A, does not explicitly provide for notice and hearing to a defendant convicted of a violation of the Act before a court may order property forfeited. In fact, the language of KRS 218A.460(2) appears only to require an ancillary hearing if requested by a third party, not the Commonwealth or a defendant. However, it is clear from the language contained in KRS 218A.410, that the Legislature intended for an individual to be afforded the basic constitutional protections of due process prior to forfeiture of otherwise legal property. We fail to discern any other reason why KRS

218A.410(1)(j) would place the burden on a claimant to rebut by clear and convincing evidence the presumption that the property, in this case money, is forfeitable. Further, KRS 218A.460 expressly provides that the claimant to other personal property has the burden to prove by a preponderance of the evidence that it is not subject to forfeiture. Holding that notice and an opportunity to contest the forfeiture of one's property are not required essentially eviscerates these burdens of proof. It defies common sense that one could meet such a burden in the absence of any knowledge of the forfeiture action.

Here, the record reflects that the November 17, 1999, motion was noticed only to Appellant's trial counsel, Schroering, whose responsibilities as trial counsel had ended over two weeks previously when he was replaced for purposes of appeal by the DPA on November 1, 1999. Although "the Due Process clause...requires only that the Government's effort [at notice] be 'reasonably calculated' to apprise a party of the pendency of the action[,]" *Dusenbery v. United States*, 534 U.S. 161, 170, 122 S.Ct. 694, 151 L.Ed.2d 597, 607 (2002) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950)), we hold that the Commonwealth's service in this case was insufficient because Schroering's prior representation of Appellant did not demonstrate a "currency and continuity of litigation and representation," *Lynch v. Commonwealth*, Ky.App., 610 S.W.2d 902, 906–7 (1980) (quoting *Guthrie v. Guthrie*, Ky., 429 S.W.2d 32, 35 (1968)), from which the Commonwealth could reasonably conclude that Appellant was still "represented by" Schroering, *see* RCr 1.08(b), or that service upon Schroering was "reasonably certain to inform [Appellant.]" *Dusenbery, supra*, 534 U.S. at 170, 122 S.Ct. 694, 151 L.Ed.2d at 606 (quoting *Mullane, supra*, 339 U.S. at 315, 70 S.Ct. 652). Since

the Commonwealth was aware of both Appellant's incarceration and the DPA's appointment for purposes of appeal, it should have noticed the motion to the DPA or Appellant himself. As Appellant in this case was not provided notice of the forfeiture action, it follows that he did not have any opportunity to present evidence to rebut the presumption that his property was forfeitable. *See Lynch, supra*, at 907 ("Without service there can be no notice; without notice there can be no compliance with one's constitutional rights of due process.").

■ Appellant also takes issue with the actual forfeiture of the $6,500 found in the minivan in the absence of any proof that it was related to the trafficking activities. We addressed this issue in *Osborne v. Commonwealth*, Ky., 839 S.W.2d 281, 284 (1992), wherein we stated:

> On examination of [KRS 218A.410(j) ], it is apparent that any property subject to forfeiture under (j) must be traceable to the exchange or intended violation. This requirement exists without regard to the presumption which appears later in the statute. Without such a requirement, the statute would mandate forfeiture of property which was without any relationship to the criminal act and would be of dubious constitutional validity....
>
> . . .
>
> The Commonwealth may meet its initial burden by producing slight evidence of traceability. Production of such evidence plus proof of close proximity, the weight of which is enhanced by virtue of the presumption, is sufficient to sustain the forfeiture in the absence of clear and convincing evidence to the contrary. In practical application, the Commonwealth must first produce some evidence that the currency or some portion of it had

been used or was intended to be used in a drug transaction. Additional proof by the Commonwealth that the currency sought to be forfeited was found in close proximity is sufficient to make a prima facie case. Thereafter, the burden is on the claimant to convince the trier of fact that the currency was not being used in the drug trade.

At trial, Appellant and his fiancée, Kimberly Guinn, testified that the $6,500 found in the minivan was a down payment on a house they were renting with an option to buy. Guinn testified that each of them contributed one-half of the down payment, and that $3,000 came from monies she received in the settlement of a car accident claim. Appellant stated that his part of the down payment was attributable to a tax return. The Commonwealth did not directly refute such testimony. None of the officers who witnessed the trafficking activities testified that a buy took place or that money exchanged hands. In fact, one of the officers stated that the individual they observed walk away from the van was not apprehended because he had not committed a crime. Thus, the Commonwealth produced no evidence at trial to indicate the $6,500 was traceable to the trafficking activities.

Further, unlike *Osborne, supra,* there was not a separate forfeiture proceeding in this case. The Commonwealth grossly mischaracterizes the record in stating that "[d]uring an evidentiary hearing conducted November 29, 1999, the trial judge ruled that the money should be forfeited because the appellant had failed to rebut the statutory presumption 'by clear and convincing evidence' that the money was not part of illegal drug activities." What the Commonwealth characterizes as an "evidentiary hearing" was, in fact, a two-minute motion hour appearance by the Commonwealth (in the absence of Appellant or

counsel) before a judge unfamiliar with the case, during which time the judge's only inquiry was whether forfeiture was permitted while the criminal conviction was on appeal. In any event, absolutely no finding of traceability was made but the order was nonetheless signed.

 Finally, Appellant argues that the forfeiture violates the Excessive Fines Clauses of the Eighth Amendment and § 17 of the Kentucky Constitution. It is well-established that punitive forfeitures such as this one implicate the excessive fines clauses. *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); *Commonwealth v. Fint,* Ky., 940 S.W.2d 896 (1997). A trial court must determine not only whether the property is sufficiently tainted by the criminal act to be subject to forfeiture, but also whether the forfeiture is grossly disproportionate to the particular offense. Some of the factors to be considered are the gravity of the offense, the potential penalties, the actual sentence, sentences imposed for similar crimes, and the effect of the forfeiture on innocent parties. *Fint, supra; United States v. Real Property Known and Numbered as 415 East Mitchell Avenue, Cincinnati, Ohio,* 149 F.3d 472 (6th Cir.1998). While the gravity of Appellant's convictions militates against him on this issue, since the trial court did not conduct any forfeiture proceedings an analysis of the excessiveness of forfeiture is premature.

Appellant's convictions are affirmed. This matter is remanded to the Jefferson Circuit court for further proceedings concerning the forfeiture of Appellant's property.

LAMBERT, C.J., COOPER, GRAVES, KELLER, and WINTERSHEIMER, JJ., concur.

STUMBO dissents in a separate opinion in which JOHNSTONE, J., joins.

Dissenting Opinion by Justice STUMBO.

Respectfully, I must dissent. I disagree with the majority opinion on Issue I and Issue II raised by Appellant. First, the majority opinion is consistent with our prior ruling in *Lawson v. Commonwealth,* Ky., 53 S.W.3d 534, 544 (2001), that "the questioner should define the penalty range in terms of the possible minimum and maximum sentences for each class of offense...." However, I must disagree with the majority's reasoning that it was harmless error since Appellant pled guilty to the PFO charge and was ultimately given the minimum possible twenty-year sentence.

This error cannot be harmless because it occurred prior to anyone knowing that the case would not reach the penalty phase. "A meaningful voir dire examination by both sides is a *sine qua non* to the seating of a fair and impartial jury." *Shields v. Commonwealth,* Ky., 812 S.W.2d 152, 153 (1991), *overruled in part by Lawson, supra.*

The issue in the case at bar was whether the trial court erred in prohibiting defense counsel from advising the jury panel about the specific sentence range carried by each of the offenses. The majority found the trial court did err. It is my opinion that the entire trial process was infected by this error and I would reverse for a new trial.

Secondly, admission of testimony regarding a photograph was highly prejudicial as it was not relevant to charges against Appellant, nor did it have any probative value. Appellant and his girlfriend testified as to the source and purpose of the money in the van, *i.e.,* proceeds from a lawsuit to be used to purchase a home. No evidence was presented that connected the money in the photo with the money in the van or illegal activity.

We are required to determine whether the probative value of such evidence outweighs the potential for prejudice to the accused. Although the photograph was not introduced, forcing Appellant to testify about the large sums of money featured in the photograph may have created an association with drug trafficking in the minds of the jury, thereby prejudicing Appellant. I believe this prejudice far outweighed the probative value of the evidence. The trial judge erred by failing to exercise sufficient caution when he allowed the Commonwealth to question Appellant regarding the contents of the photograph. Accordingly, I would reverse for a new trial.

JOHNSTONE, J., joins this dissent.