**Robert Harlin SANDS, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

**Nos. 2009–CA–001824–MR, 2009–CA–001825–MR.**

Court of Appeals of Kentucky.

July 29, 2011.

Brandon Neil Jewell, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, Todd D. Ferguson, Assistant Attorney General, Frankfort, KY, for appellee.

Before CLAYTON, COMBS, and WINE, Judges.

## OPINION

WINE, Judge:

Robert Harlin Sands appeals his conviction of multiple counts under two separate indictments in the Jefferson Circuit Court. Finding no error in the trial court's decision not to set aside his pleas of guilty, we affirm the conviction of August 28, 2009.

In September 2005, Sands was indicted for two counts of first-degree sexual abuse, one count of distribution of obscene material to minors, and one count of indecent exposure (Indictment No. 05–CR–002758).[1] Subsequently, in December 2005, Sands was indicted and charged with two counts of theft of a motor vehicle registration plate (Indictment No. 05–CR–003707).

Following a disruptive outburst in court on December 21, 2005, Sands was ordered by the trial court to undergo a competency evaluation at the Kentucky Correctional Psychiatric Center ("KCPC"). A competency hearing was held in Jefferson Circuit Court on April 13, 2006. Dr. Russell Williams from KCPC testified that, although Sands was intermittently cooperative with the staff, he diagnosed Sands as being a "blatant" malingerer and as having a personality disorder with narcissistic, dependent, and borderline traits. Dr. Williams stated that Sands is very intelligent, having an IQ of 114. In fact, Sands was the only person who had ever achieved a perfect score on one of the intelligence tests. Based on his evaluation, Dr. Williams determined and testified that Sands was competent to stand trial and to assist in his own defense. No contradictory psychological or psychiatric evidence was presented. In its subsequent order entered on April 17, 2006, the trial court found that Sands was competent.

Because of charges outstanding in another jurisdiction,[2] Sands was evaluated a second time by KCPC in September, 2006. The result of the second evaluation was nearly identical to that of the first according to the report filed with the Jefferson Circuit Court. Therefore, the trial court did not amend its findings relating to Sands's competency. Subsequently, the Spencer Circuit Court ordered an additional evaluation on October 27, 2008. However, Sands refused to participate in the evaluation. A November 18, 2008 report referred to the first evaluation by KCPC which suggested, "exaggeration and fabrication of his psychiatric symptoms." Dr. Timothy Allen opined that Sands's behavior was "related to his personality style and not a direct result of a mental illness."

Sands's trial was scheduled for July 14, 2009. Accompanied by counsel, Sands appeared for trial and exhibited another outburst. The trial court removed him from the courtroom and ruled he would have to be tried *in absentia* due to his disruptive behavior. His counsel then expressed con-

---

1. The Honorable Thomas B. Wine presided over the arraignment of Sands on September 19, 2005; however, he had no additional involvement. Additionally, in the absence of the trial judge, the Honorable Denise Clayton signed an Order entered on October 12, 2007, concerning substitution of counsel for Sands, but likewise had no additional involvement.

2. Sands was indicted in Spencer County on twelve counts of first-degree sodomy in November, 2005 (Indictment No. 05–CR–61).

cern that Sands had not received adequate treatment from KCPC and that possibly he was incompetent. The court replied that it had consulted with KCPC and learned that it is unable to treat personality disorders. The court elaborated that KCPC had spent a significant amount of time evaluating Sands and that it found him to be a malingerer. Stating that it necessarily relies on professionals, the court refused to change its finding that Sands was competent.

■ When Sands returned to the courtroom, he informed the court that he was entering an *Alford* plea[3] while preserving his right to appeal competency and treatment issues. Before accepting the plea, the court engaged in an extensive colloquy with Sands. Throughout the plea, Sands repeatedly stated he was pleading guilty so he could be released and could receive an appropriate level of medication. He also referred to "Bobby" as his alter ego who could suddenly appear and act in a disruptive manner.[4]

On the day of sentencing, Sands made a motion asking the court to allow him to withdraw his guilty plea. The court denied the motion. Sands received a total sentence of three years and ten months under both indictments.[5] Additionally, he was required to be a lifetime registrant on the Sex Offender Registry and to be subject to a three-year period of supervised, sex offender conditional discharge. This appeal followed.

Although Sands presents his arguments regarding his competency and the voluntariness of his plea as one issue, we must analyze it as two arguments. *See Thompson v. Commonwealth*, 147 S.W.3d 22 (Ky. 2004). The first issue is whether the court properly found Sands competent to stand trial; the second is whether Sands's guilty plea was knowing and voluntary.

■ A defendant is legally incompetent to enter a plea if he "lacks the capacity to appreciate the nature and consequences of the proceedings against him ... or to participate rationally in his ... defense[.]" Kentucky Rule of Criminal Procedure ("RCr") 8.06; Kentucky Revised Statute ("KRS") 504.060(4). Due process requires that an incompetent defendant cannot be prosecuted as long as the disability persists. *Mills v. Commonwealth*, 996 S.W.2d 473, 486 (Ky.1999). The same level of competency must be present to support a guilty plea. *Smith v. Commonwealth*, 244 S.W.3d 757, 760 (Ky. App.2008).

■ RCr 8.06 mandates that if a court has reasonable grounds to believe that the defendant might not be competent, it is bound to follow procedures dictated by KRS 504.100. That statute requires that the defendant must then be evaluated by a court-appointed psychiatrist or psychologist and then be afforded a competency hearing in court. We will not disturb the trial court's determination of competency unless it was clearly erroneous; *i.e.*, not supported by substantial evidence. *Fu-*

---

**3.** *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). An *Alford* plea allows a defendant to maintain his innocence while acknowledging that there is nonetheless sufficient evidence for a jury to find him guilty.

**4.** While Sands has never been diagnosed with multiple personality disorder, Dr. Williams did note in the October 18, 2006 report that

Sands "did not suffer from symptoms of delusions, psychosis, or thought disorder that would incapacitate his ability to make rational and informed decisions. There were Axis II diagnoses of Narcissistic Personality Disorder and Anti–Social Personality Disorder."

**5.** Sands had actually been in custody longer than the recommended sentence.

*gate v. Commonwealth,* 62 S.W.3d 15, 18 (Ky.2001).

After our review, we agree that the court had substantial evidence to find that Sands was competent. Although Sands was diagnosed with personality disorders, these disorders *per se* do not render him incompetent. In *Bray v. Commonwealth,* 177 S.W.3d 741 (Ky.2005), the defendant had been diagnosed with paranoid personality disorder but was determined nonetheless to be legally competent to understand the nature of the charges against him and to assist in his own defense.

■ We have previously recognized that, even in the face of unanimous medical opinion of incompetency, a trial court may find a defendant competent and able to stand trial. "A judge is also entitled to consider the testimony of laypersons and his own observations and impressions based upon the conduct and testimony of the accused at the hearing." *Scott v. Commonwealth,* 2005 WL 2045961 (Ky.App. 2005). *See also, Taylor v. Commonwealth,* 2010 WL 2696340 (Ky.App.2010).

The record indicates that Sands was aware of the nature of the charges against him and that he was capable of providing assistance to his counsel. The KCPC psychiatrist detailed Sands's high intelligence scores, and Sands submitted his own writings to the court. The court remarked upon the sophistication of his legal research and writing. Additionally, the KCPC evaluations emphasized that Sands was a malingerer with tendencies to be uncooperative *by choice.* The court, therefore, relied on professional evaluations rather than solely upon testimony from Sands or his attorney regarding his competency. At one point during the proceedings, Sands erupted aloud to the trial court that he was *not incompetent,* adding: "I'm crazy! It's not the same thing!" Therefore, we do not conclude that the court

committed clear error in determining that Sands possessed the requisite competence either to be prosecuted or to enter into a plea.

■ Sands also argues that the court erred when it denied his motion to withdraw his guilty plea. In order to be valid, a guilty plea must be made voluntarily and intelligently. *Centers v. Commonwealth,* 799 S.W.2d 51, 54 (Ky.App.1990). Before accepting a guilty plea, the trial court must consider the totality of the circumstances surrounding it. *Id. Edmonds v. Commonwealth,* 189 S.W.3d 558, 565 (Ky.2006), requires a court to engage the defendant in a *Boykin* colloquy. As required by *Boykin v. Alabama,* 395 U.S. 238, 241–42, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969), the colloquy is "an affirmative showing that [the guilty plea] was intelligent and voluntary." The *Boykin* colloquy addresses the defendant's state of mind, whether he understands his options other than the guilty plea, if he is satisfied with the representation his counsel provided, and if the plea is his own choice. We review the court's determination of voluntariness under the clearly erroneous standard. *Rigdon v. Commonwealth,* 144 S.W.3d 283, 288 (Ky. App.2004).

As noted earlier in this opinion, the trial court engaged Sands in an extensive *Boykin* colloquy on the day he entered his *Alford* plea. The court explained the specific charges and the implications of the *Alford* plea. After Sands was sworn in to testify, the court asked him some preliminary questions and then asked him directly: "What I need to be sure of is that you're thinking clearly right now." Sands replied, "No, I'm not. I'm crazier than a rat in a tin outhouse." The judge continued to question Sands, asking him if the decision to plead guilty was his own choice. He answered, "No, I believe I'm coerced. I'm under duress; I'm pressured. I have

no other choice." He then explained that he thought the only way to get his proper and necessary dosage of medication would be outside the corrections system. He claimed that if he had had proper medication, he would have proceeded to trial, a trial that he believed he would win. However, each time the court gave him the option to proceed to trial, he elected to go forward with the plea. Once when counsel explained Sands's answer to the court, Sands responded: "Well, that was smooth, but it wasn't quite what I said."

The court found that Sands's plea was voluntary. At the sentencing, Sands made a motion to withdraw his guilty plea. The court answered that it had determined that the plea was voluntary and intelligent and denied the motion.

The totality of the circumstances shows that the court and Sands had been interacting for over a four-year period. The court was quite familiar with Sands. It relied heavily upon KCPC's classification of Sands as a malingerer. Based on its conversations with KCPC, the court did not believe that Sands really needed the medication he claimed to be essential.

> Once a criminal defendant has pleaded guilty, he may move the trial court to withdraw the guilty plea, pursuant to RCr 8.10. If the plea was involuntary, the motion to withdraw it must be granted. **However, if it was voluntary, the trial court may, within its discretion, either grant or deny the motion**.... The trial court's determination on whether the plea was voluntarily entered is reviewed under the clearly erroneous standard. A decision which is supported by substantial evidence is not clearly erroneous. If, however, the trial court determines that the guilty plea was entered voluntarily, then it may grant or deny the motion to withdraw the plea at its discretion. This decision

is reviewed under the abuse of discretion standard. A trial court abuses its discretion when it renders a decision which is arbitrary, unreasonable, unfair, or unsupported by legal principles.

*Rigdon, supra,* at 288 (emphasis added) (internal citations omitted).

> The validity of a guilty plea must be determined not from specific key words uttered at the time the plea was taken, but from considering the totality of circumstances surrounding the plea. *Kotas v. Commonwealth,* Ky., 565 S.W.2d 445, 447 (1978); *Lynch v. Commonwealth,* Ky.App., 610 S.W.2d 902 (1980); *Sparks [v. Commonwealth], supra* [721 S.W.2d (Ky.App.1986)]. These circumstances include the accused's demeanor, background and experience, and whether the record reveals that the plea was voluntarily made. *Sparks, supra; Littlefield v. Commonwealth,* Ky.App., 554 S.W.2d 872 (1977). The trial court is in the best position to determine if there was any reluctance, misunderstanding, involuntariness, or incompetence to plead guilty. *Littlefield, supra,* at 874. *See Kotas, supra,* at 447. Solemn declarations in open court carry a strong presumption of verity. *Blackledge v. Allison,* 431 U.S. 63, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977).

*Centers v. Commonwealth, supra,* at 54.

Here, the trial judge was well aware of the antics engaged in by Sands. Although Sands was diagnosed with personality disorders, evaluations showed he has a high IQ, and he had also been identified as a malingerer. Like a rat in a maze, as opposed to one in a tin outhouse, Sands had learned to navigate the system—making motions to recuse counsel and refusing to cooperate with medical personnel at KCPC—antics which caused his trial to be postponed. Apparently on the July 14, 2009 trial date, when Sands recognized

that witnesses were present, the prosecutor was prepared for trial, and the court was available, he decided to plead guilty.

As an appellate court, we are cognizant that " 'the trial court is in the best position to determine if there was any reluctance, misunderstanding, involuntariness, or incompetence to plead guilty' at the time of the guilty plea and in a 'superior position to judge [witnesses'] credibility and the weight to be given their testimony' at an evidentiary hearing." *Bronk v. Commonwealth,* 58 S.W.3d 482, 487 (Ky.2001) (internal citations omitted).

Because the trial judge was in the best position to judge the credibility of Sands's answers and in light of the totality of the circumstances, we find no error in the determination by the trial court that Sands's plea was knowing and voluntary. Therefore, we conclude the trial court committed no error when it accepted Sands's *Alford* plea and affirm the judgment of the Jefferson Circuit Court.

CLAYTON, Judge, concurs.

COMBS, Judge, concurs in part, dissents in part, and files separate opinion.

COMBS, Judge, concurring in part and dissenting in part:

The majority opinion correctly notes that two issues are involved in this appeal: (1) whether Sands was competent to stand trial and (2) whether his plea was entered knowingly and voluntarily. I agree with the majority opinion's affirmance of the trial court as to competency. I dissent as to the voluntariness of his plea and consequently would remand on this second issue.

The majority opinion observes at page 14 that "Sands had learned to navigate the system" and to engage in "antics which caused his trial to be postponed." While no doubt true, his cagey manipulation of the system in no way bears upon the voluntary nature of his plea. Indeed, his very cunning bolsters the court's finding that he was competent to stand trial.

If he was competent to stand trial, he was perforce competent to negate, to deny, or to nullify his own volition in entering a guilty plea. I would focus on that portion of the *Boykin* colloquy in which Sands reiterated his lack of voluntariness and his motive for nonetheless entering the plea— namely, to obtain medication as a *quid pro quo* for the plea. He answered, "No, *I believe I'm coerced.* I'm under duress; I'm pressured. I have no other choice." (Emphasis added.) He then explained that he thought the only way to get his proper and necessary dosage of medication would be outside the corrections system— another example of his ability to "navigate the system." He claimed that if he had had proper medication, he would have proceeded to trial, a trial that he asserted he would have won.

> Sands's counsel then interjected, "The question is really outside coercion, and Mr. Sands has made it clear that he is not being outside coerced. One can feel pressured by one's options."

> Sands agreed. Then the court asked: "You feel coercion by the situation you're in? And because you feel that the only way you're going to get the medication you need in the amount you need is if you're outside this setting?"

> Sands answered affirmatively.

> After going over the witness list with Sands, the court asked Sands if he believed that the Commonwealth's evidence was sufficient to convince a jury of his guilt.

> He responded, "Under these circumstances, no." He again elaborated that without medication he wasn't allowed to

be in the courtroom and would not be able to assist in his defense.

Sands's counsel again interjected, "... he just answered the questions affirmatively. Based on the rulings you've made—*in absentia,* the evidence against him, and his medical state—he believes they have enough proof."

Sands remarked, "Well, that was smooth, but it wasn't quite what I said."

Nonetheless, the court found that Sands's plea was voluntary. When Sands again made a motion to withdraw his guilty plea at his sentencing, the court denied the motion.

This is undoubtedly a close case. As the majority opinion notes, the court and Sands had been interacting over a four-year period. The court was not only familiar with Sands but had exhibited enormous patience in dealing with him.

On the other hand, the court was aware that the Commonwealth had significant evidence to use against him. When Sands replied to *Boykin* colloquy questions in the negative, the court had the option to proceed or not to proceed with trial. Counsel for both parties were prepared, and the jury and witnesses were available.

It is most troubling to me that many of Sands's responses were intercepted, interpreted, and explained by counsel. The court accepted counsel's construction of his statements—*even when Sands disagreed with his counsel's interpretation.* Additionally, the court did not specifically state its reasons for finding the plea voluntary—except to repeat or rephrase Sands's words.

I am not persuaded that this sort of equivocal colloquy sufficed to constitute a voluntary plea. I believe that the colloquy was facially flawed and that Sands's "antics" detracted from the real issue—that of genuine voluntariness. The option of trial

was readily available, and the protestations of Sands as to his sense of coercion were loud, clear, and insistent. I am persuaded, therefore, that the court clearly erred in not allowing him to withdraw the plea and to proceed to trial.

A trial is not unduly burdensome; however, a plea improperly entered is troubling to the conscience and an affront to our rules of criminal procedure. On the *Boykin* issue alone, I would vacate and remand for proceedings consistent with this opinion.