Latrellva JOHNSON, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2007–CA–002517–MR.

Court of Appeals of Kentucky.

Feb. 6, 2009.

Roy A. Durham, Assistant Public Advocate, Frankfort, KY, for appellant.

Jack Conway, Attorney General of Kentucky, David W. Barr, Assistant Attorney General, Frankfort, KY, for appellee.

Before COMBS, Chief Judge; WINE, Judge; BUCKINGHAM,[1] Senior Judge.

## OPINION

BUCKINGHAM, Senior Judge.

Latrellva Johnson appeals from a judgment of the Fayette Circuit Court wherein he was convicted and sentenced to ten years in prison for drug offenses and for being a first-degree persistent felony offender (PFO). He also appeals from the trial court's order directing that cash seized from him be forfeited. The three issues raised on appeal involve the prior convictions supporting the PFO charge, the sufficiency of the evidence supporting the primary charge, and the sufficiency of the evidence supporting the forfeiture of

---

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

the seized cash. We affirm in part, reverse in part, and remand.

During the late hours of November 17, 2005, Lexington police officers received a tip that someone selling cocaine at Keeneland Racetrack was staying at Room 211 of Knights Inn. Officers Duane, Shirley, Bean, and Iddings of the Lexington police department arrived at Knights Inn around midnight and proceeded to do a "knock and talk" investigation at Room 211. Johnson answered the door and consented to the officers' request to enter. Johnson lived in Florida and worked for Brookledge Horse Transportation as a groomer/attendant. While working for Brookledge, he traveled to Kentucky to work at the Keeneland horse sales. Another male, Jason Rich, was also in the room. The officers requested permission to search the room for illegal drugs, and Officer Duane testified that Johnson gave his consent.[2]

Officer Shirley found a prescription bottle containing crack cocaine and a small bag of powder cocaine in a red plaid shirt. He also found a large amount of cash in two wallets located in the box springs of Johnson's bed and in a sock in Johnson's suitcase. Officer Duane found a bag of marijuana under Rich's bed, and Rich admitted that the marijuana was his. Officer Duane also found a bag containing a Chore Boy scrubber, which is sometimes used in crack pipes, under the sink.

In total, the officers discovered 31.1 grams of crack cocaine, 6.6 grams of powder cocaine, the bag of marijuana, and $7,698 in cash. Johnson admitted that the cocaine was his, but he claimed that he had found it when he was walking to a Subway restaurant near the hotel. As for the cash, Johnson's uncle from Florida testified at trial that he had given Johnson $4,500 in

late October, just before Johnson had left for Kentucky, to buy a truck.

A Fayette County grand jury indicted Johnson on charges of first-degree trafficking in a controlled substance (cocaine), possession of drug paraphernalia, and first-degree PFO. A police detective testified at trial that the crack cocaine had a street value of $3,080 ($20 per rock for 154 rocks) and that the powder cocaine had a street value of $250–300. He also testified that, in his opinion, Johnson was a mid-level dealer.

Following a trial, the jury found Johnson guilty of all charges. The court sentenced Johnson to seven years on the trafficking charge, enhanced to ten years due to his PFO status. He was sentenced to time served on the misdemeanor charge of possession of drug paraphernalia. This appeal followed.

■ Johnson's first argument is that the trial court erred by not dismissing the PFO charge. Based on evidence in the sentencing phase of the trial that Johnson had two prior felony cases in Florida, the jury found him guilty of first-degree PFO and enhanced his sentence for trafficking in a controlled substance from seven years to ten years. Johnson contends that the two prior offenses upon which the Commonwealth relied in prosecuting him did not qualify for use under the PFO statute.

The prior offenses, for trafficking in a controlled substance and possession of a controlled substance, occurred in Marion County, Florida. In case 00–4394, the Florida court withheld adjudication of guilt and sentenced Johnson to sixty days confinement but suspended the sentence for a period of sixty days. Johnson was also required to pay fines and costs. In cases 02–0580 and 02–3879, the court withheld adjudication of guilt and sentenced John-

---

2. Johnson does not challenge the legality of the search in this appeal.

son to drug offender probation for a period of three years. No sentence of incarceration, either to be served or suspended, was imposed. Again, Johnson was required to pay fines and costs.

Johnson's argument is twofold. First, he argues that he did not qualify to be prosecuted as a first-degree PFO because he did not receive a sentence of one year or more in any of the cases. Second, he argues that he did not qualify to be prosecuted as a first-degree PFO because he was never found to be guilty of any of the offenses for which he was charged in Florida.

Kentucky Revised Statutes (KRS) 532.080(3) states in part:

A persistent felony offender in the first degree is a person who is more that twenty-one (21) years of age and who stands convicted of a felony after having been convicted of two (2) or more felonies, or one (1) or more felony sex crimes against a minor as defined in KRS 17.500, and now stands convicted of any one (1) or more felonies. As used in this provision, a previous felony conviction is a conviction of a felony in this state or conviction of a crime in any other jurisdiction provided:

(a) That a sentence to a term of imprisonment of one (1) year or more or a sentence to death was imposed therefor[.]

In denying Johnson's motion to dismiss the PFO charge, the trial court reasoned that the offenses for which Johnson was convicted were felonies under Florida law and were punishable by imprisonment exceeding one year. The court further reasoned that under Florida law, a sentence of probation without an adjudication of guilt qualifies as a prior conviction.

In response to Johnson's arguments, the Commonwealth contends that "the only relevant issue is whether the prior convictions were for felony offenses, thus making the defendant subject to imprisonment for one (1) year or more." The Commonwealth also states that since both offenses in Florida are felonies under Kentucky law, then "both convictions were proper for sentence enhancement usage per KRS 532.080."

Much of the controversy on this issue concerns the interpretation of several Kentucky cases. The cases are *James v. Commonwealth*, 647 S.W.2d 794 (Ky.1983), *overruled on other grounds by James v. Kentucky*, 466 U.S. 341, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984); *Ware v. Commonwealth*, 47 S.W.3d 333 (Ky.2001); and *Commonwealth v. Davis*, 728 S.W.2d 532 (Ky.1987).

In *James*, the defendant argued that he did not qualify for PFO prosecution based on a conviction in Nebraska because he was not actually imprisoned for one year or more. The court rejected the defendant's argument and cited the Commentary accompanying KRS 532.080 for the proposition that a conviction from another state can qualify for PFO purposes "if it carried a penalty of one year or more." *James*, 647 S.W.2d at 796, quoting from the Commentary to KRS 532.080. We see no relevance to the *James* case since the two convictions upon which the Commonwealth relied in that case involved sentences of one year or more. *James* merely holds that "the statute does not require actual imprisonment[.]" *Id.*

In *Ware*, the defendant had two prior convictions from North Carolina. In one case he had been sentenced to eighteen months for driving on a revoked license, and in the other case he had been sentenced to two years for damage to personal property. Both crimes were misdemeanor offenses under North Carolina law. The defendant argued that since the

crimes were misdemeanors, he did not qualify for PFO prosecution. The Kentucky Supreme Court held, however, that:

> Since sentences of one year or more were imposed for each of Appellant's previous convictions, both are considered previous felony convictions for purposes of PFO enhancement.

*Id.* at 334.

In *Davis*, the defendant had been convicted in Ohio of breaking and entering and had been sentenced to an indeterminate term of imprisonment of six months to five years. In rejecting the defendant's argument that he did not qualify for PFO prosecution, the court held that "[t]he key is that the maximum sentence imposed which can be served in a foreign jurisdiction controls and permits the crime to be considered as a felony in Kentucky." *Id.* at 533. Thus, because the defendant was sentenced to a maximum sentence of five years, the court upheld the PFO conviction. *Id.*

The gist of the Commonwealth's argument is that the prior convictions from Florida qualify to support a PFO prosecution under KRS 532.080(3) because such convictions would have been felony offenses in this state. The Commonwealth asserts that both the *James* and the *Ware* cases so hold. We disagree. Again, the *James* case merely holds that the statute does not require that the sentence of one year or more must actually be served. *Id.* at 796. The *Ware* case merely holds that convictions from foreign jurisdictions may be used in PFO prosecutions under KRS 532.080 so long as the sentence imposed is one year or more, even though those convictions may be for offenses designated as misdemeanors in that state. *Id.* at 334.

We conclude that the language of the statute is clear and unambiguous. In order for there to be a first-degree PFO prosecution based on convictions from a foreign jurisdiction, the sentences imposed for each conviction must be for one year or more or a sentence of death. KRS 532.080(3)(a). This is consistent with the *James, Ware,* and *Davis* cases.

As that principle applies to this case, Johnson's Florida conviction in Florida case 00–4394 does not qualify for use in PFO prosecution since Johnson was sentenced to only sixty days. In Florida cases 02–0580 and 02–3879, there is no indication that Johnson was sentenced to any term of imprisonment, regardless of whether any such term may have been to be served, suspended, or probated. Rather, he was sentenced to "drug offender probation" for a period of time. Therefore, as the Commonwealth lacked proof of convictions that qualified for PFO prosecution, we conclude that the trial court erred in denying Johnson's motion to dismiss the PFO charge.[3]

■ Johnson's second argument is that the trial court erred in denying his motion for a directed verdict on the trafficking charge. He contends that the Commonwealth did not show evidence of a drug transaction and that "no reasonable jury could find that Johnson was trafficking in cocaine simply because he had a large sum of money in his room." He further contends that "the Commonwealth did not produce any evidence of substance to show Mr. Johnson possessed cocaine with the intent to traffic."

■ "On motion for a directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in

---

3. It is not necessary for us to address whether the Florida cases also failed to qualify for PFO prosecution under KRS 532.080(3) on the ground they were not "convictions" due to adjudication of guilt being withheld.

favor of the Commonwealth." *Common-wealth v. Benham,* 816 S.W.2d 186, 187 (Ky.1991). "On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Id.*

First, we note that in order to prove that Johnson was guilty of trafficking in a controlled substance rather than only possession, the Commonwealth was required to prove that Johnson manufactured, distributed, dispensed, sold, transferred, or possessed with intent to manufacture, distribute, dispense, or sell a controlled substance. *See* KRS 218A.1412(1) and KRS 218A.010(40). In other words, a specific drug transaction need not be proved. Possession with intent to sell is sufficient under the language of the statute.

The evidence of the Commonwealth included the following: 1) police officers had a tip that a person selling cocaine at Keeneland was staying in Room 211 at Knights Inn; 2) Johnson was staying in Room 211 at Knights Inn, and a search of his room uncovered a quantity of cocaine; 3) the quantity of cocaine recovered indicated that its possessor was a mid-level dealer; 4) Johnson admitted the cocaine was his; and 5) a large amount of cash was also found in the room, and Johnson admitted the cash was his. Under these facts, we conclude it was not clearly unreasonable for a jury to conclude that Johnson was guilty beyond a reasonable doubt of trafficking in cocaine. Thus, the trial court did not err in denying Johnson's motion for a directed verdict.

█ Finally, Johnson argues that the trial court erred in ordering the forfeiture of the seized cash because there was no connection between the money and the offenses for which he was convicted. Following a forfeiture hearing subsequent to the trial, the court ordered the cash forfeited. The court concluded that Johnson had not rebutted by clear and convincing evidence the presumption that the cash was forfeitable.

Two wallets containing cash were found by the officers in a hole that had been cut in the box springs of Johnson's bed. One wallet contained $4,300, consisting of thirty-six $100 bills and fourteen $50 bills. The other wallet contained $3,000, consisting of one hundred fifty $20 bills. The sock found in Johnson's suitcase contained $390. The crack cocaine was found in a bottle lying in Johnson's clothes next to his bed.

KRS 218A.410(j) provides in part that "[i]t shall be a rebuttable presumption that all moneys, coin, and currency found in close proximity to controlled substances ... are presumed to be forfeitable under this paragraph." Further, "[t]he burden of proof shall be upon the claimants of personal property to rebut this presumption by clear and convincing evidence." *Id.*

In *Osborne v. Commonwealth,* 839 S.W.2d 281 (Ky.1992), the Kentucky Supreme Court explained the additional requirement of traceability. The *Osborne* court held:

> On examination of the foregoing statute, it is apparent that any property subject to forfeiture under (j) must be traceable to the exchange or intended violation. This requirement exists without regard to the presumption which appears later in the statute. Without such a requirement, the statute would mandate forfeiture of property which was without any relationship to the criminal act and would be of dubious constitutional validity under Sections 2, 11, 13, 26 and possibly other sections of the Constitution of Kentucky. With such a requirement,

however, the General Assembly is entitled to great latitude to create presumptions.

Recognizing the difficulty of proof with respect to showing a connection between currency and drug transactions, the General Assembly created a presumption whereby currency found in close proximity to controlled substances was presumed to be forfeitable subject to the right of the owner to rebut the presumption. While the presumption would, at first blush, appear to dispense with the requirement of traceability, we believe the two must be construed harmoniously so as to give effect to the intention of the General Assembly.

The Commonwealth may meet its initial burden by producing slight evidence of traceability. Production of such evidence plus proof of close proximity, the weight of which is enhanced by virtue of the presumption, is sufficient to sustain the forfeiture in the absence of clear and convincing evidence to the contrary. In practical application, the Commonwealth must first produce some evidence that the currency or some portion of it had been used or was intended to be used in a drug transaction. Additional proof by the Commonwealth that the currency sought to be forfeited was found in close proximity is sufficient to make a *prima facie* case. Thereafter, the burden is on the claimant to convince the trier of fact that the currency was not being used in the drug trade.

*Id.* at 284. Johnson contends that the Commonwealth failed to prove the requirement of traceability. We disagree.

The evidence indicated that the cash was found in close proximity to the cocaine. Further, the cash consisted primarily of denominations that represented the sale of specific amounts of crack cocaine. The police detective testified that one wallet contained one hundred fifty $20 bills and that crack cocaine is usually sold in $20 "rocks" weighing between 0.10 and 0.20 grams each. The other wallet contained thirty-six $100 bills and fourteen $50 bills. The detective testified that a crack cocaine user could purchase five rocks for $100, payable with a $100 bill or with two $50 bills.

Johnson did not contest that the cash in the amount of $3,000 in one wallet and the $390 cash found in his sock were forfeitable. This money was in $20 bills, and the crack cocaine was in $20 rocks. He contested, however, the forfeiture of the $4,300 cash, which was in $50 and $100 denominations, in the other wallet.

In light of evidence that the denominations of cash were in amounts that customarily were used in the purchase of rocks of crack cocaine and evidence that the two wallets containing the cash, some of which Johnson did not contest was forfeitable, were found together, we conclude that the Commonwealth produced at least "slight" evidence of traceability.

The burden of proof then shifted to Johnson to rebut by clear and convincing evidence the presumption that the cash was forfeitable. In that regard, Johnson's uncle testified that he had given Johnson $4,500 before Johnson left Florida so that Johnson could purchase a truck. Viewing the evidence as a whole, we conclude that the trial court was within its discretion in determining that Johnson had not rebutted the presumption by clear and convincing evidence and in ordering the forfeiture of the cash.

The judgment of the Fayette Circuit Court is affirmed as to Johnson's convictions for first-degree trafficking in a con-

trolled substance and possession of drug paraphernalia and as to the forfeiture of the cash, but the judgment is reversed as to Johnson's conviction for being a first-degree PFO. The case is remanded for the entry of an amended judgment dismissing the PFO charge and sentencing Johnson to seven years in prison for the trafficking offense rather than ten years.

ALL CONCUR.