RENDERED: JUNE 17, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2020-SC-0025-DG

COMMONWEALTH OF KENTUCKY                  APPELLANT

V.

ON REVIEW FROM COURT OF APPEALS
NO. 2019-CA-0130
JEFFERSON CIRCUIT COURT NO. 17-CR-1411-001

ALISHA DOEBLER                               APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>REVERSING</u>**

The Commonwealth appeals the Court of Appeals' reversal of the Jefferson Circuit Court's order that Appellee, Alisha J. Doebler, forfeit $3,759 in cash that law enforcement officials seized the day Doebler and her co-defendant, Jason Lankford, were arrested. The Court of Appeals held that the Commonwealth failed to establish slight traceability of the funds to the drug trafficking activities. Therefore, the trial court's forfeiture order was erroneous. Having reviewed the record in conjunction with all applicable legal authority, we reverse the Court of Appeals and reinstate the Jefferson Circuit Court's forfeiture order.

# I. FACTS

The Jefferson County Grand Jury indicted Doebler and Lankford for complicity to traffic in a controlled substance, first degree, schedule II methamphetamine two grams or more; complicity to illegal possession of a controlled substance, first degree, schedule I heroin; and complicity to illegal use or possession of drug paraphernalia. The indictments resulted from officers responding to a motel fire alarm on March 14, 2017. Upon arrival, a motel employee informed the officers that a female had been reported stealing clothing from motel guests and was in room 226. Officers went to room 226, encountered Doebler and Lankford, and discovered drugs in the room. Upon their arrest, officers seized drugs, various cellular telephones, a digital scale, a "loaded syringe," and $3,759 in cash from Doebler's purse. The subject of this appeal is the forfeiture order regarding the $3,759 seized from Doebler's purse.

Lankford eventually entered a guilty plea to trafficking methamphetamine, less than two grams; possession of heroin; and possession of drug paraphernalia. In his plea colloquy, Lankford admitted to the following facts regarding his arrest:

> On March 14, 2017 in Jefferson County, Kentucky, officers were dispatched on a fire alarm issue at a motel. While on scene, a motel employee stated a female had been seen stealing clothes from tenants and was at Room 226. Upon contact, officers found [Lankford] with less than 2 grams of methamphetamine packaged for sale, a baggie of heroin, and a digital scale.

Lankford did not mention Doebler in the plea, nor did he testify at Doebler's subsequent forfeiture hearing. Additionally, when the court accepted

2

Lankford's plea in this case, it accepted his plea in a separate, unrelated indictment for trafficking in controlled substances.

Doebler entered a guilty plea to the charge of possession of drug paraphernalia for the syringe, and the Commonwealth dismissed her remaining charges. Doebler's plea acknowledged her rights and agreed to the following facts:

> On March 14, 2017, officers were dispatched on a fire alarm issue at a motel. While on scene, a motel employee stated a female had been seen stealing clothes from tenants and was at Room 226. Upon contact, officers found [Doebler] was in possession of a syringe.

The trial court accepted Doebler's plea and sentenced her to twelve months' imprisonment, conditionally discharged for two years. The guilty plea did not include an agreement as to the disposition of the cash recovered from Doebler's purse at the time of her arrest. The Commonwealth requested a forfeiture hearing pursuant to Kentucky Revised Statute ("KRS") 218A.410(1)(j) seeking forfeiture of all the cash recovered from Doebler.

At the conclusion of Doebler's plea, and after a short recess, the trial court reconvened to conduct the forfeiture hearing. The forfeiture hearing began with the trial court directing Doebler's counsel to begin the defendant's presentation of evidence. Without objection, defense counsel called Doebler to the stand as its first witness. Doebler testified that the money in question resulted from the closure of her late father's PNC bank account the day before her arrest. Her father's account had approximately $8,000 in it, which she and

her brother split. Defense counsel then introduced into evidence certified bank and probate records supporting Doebler's statements.

Doebler explained that she had spent approximately $200 of the money the previous day on jewelry shortly after receiving it. This explanation addressed the discrepancy between the sum received from PNC and the balance confiscated in the motel room. The confiscated cash consisted of mostly $100-dollar bills, still in a bank envelope inside Doebler's purse. She testified that she intended to deposit the balance in her account on the day of her arrest. Doebler asserted that the money had nothing to do with any drug trafficking activity.

On cross-examination, Doebler reiterated that the money was her share of her father's estate settlement. She emphasized that she had received the money the prior afternoon, and after accompanying her brother to deposit his portion in his bank, had spent approximately $200 to purchase jewelry the prior evening. The Commonwealth asked Doebler whether at 6:30 in the morning she was in a motel room with Jason Lankford and whether in that room were approximately thirty-nine grams of methamphetamine and some small bindles of heroin. In response, Doebler stated, "I reckon. But I didn't even know."[1] The Commonwealth pressed Doebler about the nature and quantity of drugs discovered in the motel room and asked whether she remembered the

---

[1] We note that this is the only exchange that attempts to identify the specific quantity of drugs in the motel room. In reviewing the exchange, we do not find that Doebler was agreeing to the specific quantity of thirty-nine grams of methamphetamine, but rather was acknowledging that officers found a significant quantity of drugs in the room.

officer finding the baggie of methamphetamine on a table next to the bed. Doebler responded, "I reckon, yeah."

The Commonwealth then inquired about the scale with drug residue. Doebler continued to deny knowledge of the nature of the drugs or whether Lankford was packaging them for sale and maintained that the room was not her room and that the drugs were not her drugs. She generally acknowledged that police found drugs in the room and a scale with residue on it but stated she did not know whether the residue was drugs. When asked, Doebler admitted she pled guilty to possession of drug paraphernalia based on the syringe officers discovered on a table in the room. However, she denied that she was in Lankford's room to traffic drugs or that she planned to use the money in her possession to buy drugs. The Commonwealth asked, "[s]o you just ended up in a motel room with a bunch of drugs, syringe, and digital scale?" Doebler responded that she was there to purchase a cellular phone with some of the money and planned to go from there to her bank to deposit the rest.

The next witness to testify was Joshua, Doebler's brother. Prior to Joshua's testimony the Commonwealth told the court they were willing to stipulate to the fact that Doebler and her brother received an inheritance. Despite the Commonwealth's stipulation, defense counsel asked to be permitted to present Joshua's brief testimony which the court permitted. Joshua corroborated Doebler's testimony that they had received funds from closing their father's bank account on March 13, 2017. He confirmed that he and Doebler split the funds amounting to a little less than $4,000 each. The

5

Commonwealth did not cross-examine Joshua. The court asked counsel if Doebler had any other evidence to present, to which counsel indicated they had no further witnesses or evidence, only final argument. The Commonwealth never called any witnesses.

Defense counsel summarized Doebler's argument, stating it was the defense's understanding that KRS 218A.410 creates a rebuttable presumption that when money is found in close proximity to drugs, the money is forfeitable. Counsel believed Doebler had successfully rebutted the statutory presumption that the money was in any way tied to drug trafficking. He argued that nothing in Doebler's plea indicated a tie to trafficking, that Lankford's plea never implicated Doebler in any way to his trafficking, and that the money was in crisp hundred-dollar bills, denominations not typically associated with trafficking activities. Defense counsel stated, "[i]t was a fantastic coincidence no doubt," but that Doebler had presented exactly the type of evidence the statute envisions to rebut any presumption.

The Commonwealth argued the proximity of the money to Lankford's drugs, combined with Doebler's plea regarding the paraphernalia, entitled it to the statute's presumption of forfeiture. The Commonwealth contended Doebler had failed to rebut the presumption by clear and convincing evidence. Notwithstanding the evidence that Doebler presented as to where the money originated from, it becomes forfeitable once it becomes connected to drug trafficking.

6

Again, defense counsel countered that the Commonwealth had failed to proffer any evidence tying Doebler's money to drug trafficking. Lankford's plea did not implicate Doebler. Her plea was to possession of paraphernalia, not to any trafficking offense. Defense counsel emphasized the Commonwealth's failure to call witnesses or introduce any evidence supporting traceability between the money and the drug trafficking activity in question. Counsel contended that the Commonwealth asked the court to speculate why Doebler was in the room without offering any evidence.

Before adjourning, the court summarized the parties' arguments. The court stated that its understanding of Doebler's argument was that the source of the funds was the primary determiner of forfeitability and the evidence presented showed the money was not the proceeds of any drug activity. The defense also argued that the Commonwealth had failed to adequately tie the cash to drug transactions. On the other hand, the court summarized the Commonwealth's position as conceding the origin of the money but focusing on the statute's provisions that permitted forfeiture of funds intended to purchase drugs or facilitate such transactions.

After the hearing, the court entered an order directing Doebler to forfeit the cash. The trial court's order stated:

> The matter came before the Court on December 14, 2018, for hearing on the [Commonwealth's] motion for forfeiture....The Court heard proof and argument. The Court finds that the source of the disputed funds was [Doebler's] inheritance from her late father's estate. However, that is not the central inquiry here. KRS 218A.410 states that all proceeds intended to be used to facilitate a drug transaction are forfeitable, and the burden of proof to rebut the presumption is on the defendant. Given the nature of

7

[Doebler's] conviction herein and the proximity of the cash proceeds to the drugs when they were discovered by the police, the Court finds [Doebler] has not carried her burden of proof.

IT IS HEREBY ORDERED that the cash proceeds in this matter are forfeited to the Commonwealth.

On appeal, the Court of Appeals reversed, holding the proximity to illegal drug activity is insufficient where the defendant has convinced the court she obtained the funds legally. The Court of Appeals held the Commonwealth failed to meet its admittedly minimal burden to justify forfeiture. Citing *Osborne v. Commonwealth*, 839 S.W.2d 281 (Ky. 1992), the Court of Appeals stated forfeiture required proximity and traceability, and the Commonwealth had failed to adequately present evidence of traceability. The Commonwealth appealed.

## II. ANALYSIS

A. **The trial court did not clearly err in determining sufficient facts existed to establish slight traceability of the money to drug activity, raising the presumption of forfeiture, and did not abuse its discretion in determining Doebler failed to rebut the statutory presumption of forfeiture.**

We begin by citing the applicable law and standard of review. KRS 218A.410(1)(j) allows for the following to be subject to forfeiture:

Everything of value furnished, or intended to be furnished, in exchange for a controlled substance in violation of this chapter, all proceeds, including real and personal property, traceable to the exchange, and all moneys, negotiable instruments, and securities used, or intended to be used, to facilitate any violation of this chapter; except that no property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by him or her to have been committed or omitted without his or her knowledge or consent. It shall be a rebuttable presumption that all moneys, coin, and currency found in close proximity to controlled substances, to drug

8

manufacturing or distributing paraphernalia, or to records of the importation, manufacture, or distribution of controlled substances, are presumed to be forfeitable under this paragraph. The burden of proof shall be upon claimants of personal property to rebut this presumption by clear and convincing evidence. The burden of proof shall be upon the law enforcement agency to prove by clear and convincing evidence that real property is forfeitable under this paragraph.

"[T]he Commonwealth bears the initial burden of producing some evidence, however slight, to link the [property] it seeks to forfeit to the alleged violations of KRS 218A. The burden only shifts to the opponent of the forfeiture if the Commonwealth meets its initial tracing burden." *Brewer v. Commonwealth*, 206 S.W.3d 343, 348 (Ky. 2006). If the Commonwealth establishes its *prima facie* case, the burden is then on the defendant to rebut this presumption by clear and convincing evidence. *Osborne*, 839 S.W.2d at 284. The trial court's factual findings are reviewed for clear error, while its conclusions of law are reviewed de novo. *Commonwealth v. Coffey*, 247 S.W.3d 908, 910 (Ky. 2008). Whether property is in close proximity to controlled substances, to drug manufacturing or distributing paraphernalia, or to records of the importation, manufacture, or distribution of controlled substances and whether there is traceability between the property and drug activities in question are both questions of fact. A factual finding is not clearly erroneous if it is supported by substantial evidence, that is, "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted). Whether a defendant has rebutted the presumption by clear and convincing evidence is

9

reviewed for abuse of discretion. *Robbins v. Commonwealth*, 336 S.W.3d 60, 65 (Ky. 2011) (citing *Johnson v. Commonwealth*, 277 S.W.3d 635, 641 (Ky. App. 2009)).[2]

As the Court of Appeals noted, both parties rely heavily on our decision in *Osborne*[3] which addressed the same statutory provision at issue in this case. In *Osborne*, we began by noting that KRS 218A.410(1)(j) permits forfeiture of "[e]verything of value furnished . . . in exchange for a controlled substance in violation of this chapter, all proceeds . . . traceable to the exchange, and all moneys … used, or intended to be used to facilitate any violation of this

---

[2] *See also Brewer v. Commonwealth*, 206 S.W.3d 313, 327 (Ky. 2006); *Hill v. Commonwealth*, 308 S.W.3d 227 (Ky. App. 2010); *Cf. Sexton v. Sexton*, 125 S.W.3d 258 (Ky. 2004) (finding family court's determination that marital property presumption was successfully rebutted was not clearly erroneous); *Bjelland v. Bjelland*, 408 S.W.3d 86 (Ky. App. 2013) (applying abuse of discretion standard to family court's deviation from statutorily presumed child support guidelines).

[3] As the Court of Appeals noted, *Osborne* was decided by a fractured Court, but we note it was not fractured as to a requirement the Commonwealth bear at least a minimal burden of establishing both proximity and traceability. Justice Joseph Lambert authored the opinion establishing the rule and remanding to the circuit court for further proceedings and fact-finding. While only Justice Reynolds concurred in full, Chief Justice Stephens concurred with the newly established rule but dissented as to the need to remand for further fact-finding, stating that "[f]rom the evidence presented to this Court, it is clear that it was established that the currency was not subject to forfeiture. The Commonwealth should not be given a second bite at the apple." Justice Leibson, joined by Justice Combs, concurred as to reversal and remand regarding the money forfeiture but would have established an even more stringent "substantial connection" test to justify a forfeiture. Justice Wintersheimer, joined by Justice Spain, dissented regarding the money forfeiture. Their dissent would have held that the defendant had failed to rebut the presumption by clear and convincing evidence. The framework *Osborne* established has since been cited with favor (and agreement) numerous times. *See Smith v. White*, No. 3:11-CV-570-C, 2012 WL 3961233 (W.D. Ky. Aug. 7, 2012); *Robbins*, 336 S.W.3d 60; *Gray v. Commonwealth*, 233 S.W.3d 715 (Ky. 2007); *Brewer*, 206 S.W.3d 313; *Brewer*, 206 S.W.3d 343; *Harbin v. Commonwealth*, 121 S.W.3d 191 (Ky. 2003); *Lee v. Commonwealth*, 606 S.W.3d 95 (Ky. App. 2020); *Jackson v. Commonwealth*, No. 2018-CA-000598-MR, 2020 WL 4557711 (Ky. App. July 17, 2020); *Smith*, 339 S.W.3d 485; *Hill*, 308 S.W.3d 227; *Johnson*, 277 S.W.3d 635; *Matter of U.S. Currency in the Amount of $315,900.00*, 902 P.2d 351 (Ariz. Ct. App. 1995).

chapter." 839 S.W.2d at 283. We went on to recognize that proving the connection between currency and drug transactions is difficult. To address this difficulty, the General Assembly created a rebuttable presumption "that all moneys, coin, and currency found in close proximity to controlled substances, to drug manufacturing or distributing paraphernalia, or to records of the importation, manufacture, or distribution of controlled substances, are presumed to be forfeitable under this paragraph." *Id.* at 283-84. We acknowledged that although the presumption appeared to eliminate the traceability requirement on its face, a mandated forfeiture would be "of dubious constitutional validity" without such a requirement. *Id.* at 284. We held that to construe the statute in a way that gives effect to the General Assembly's intent, "[t]he Commonwealth may meet its initial burden by **producing slight evidence of traceability.**" *Id.* (emphasis added). "Production of such evidence plus proof of close proximity, the weight of which is enhanced by virtue of the presumption, is sufficient to sustain the forfeiture in the absence of clear and convincing evidence to the contrary." *Id.*

Therefore, while proximity provides a presumption of forfeitability, the Commonwealth must still put forward some modicum of evidence tracing the funds to the drug transaction as either "proceeds," money intended to be furnished in exchange for a drug transaction, or money intended to facilitate a violation of KRS Chapter 218A. KRS 218A.410(1)(j). We note that while proximity and traceability are both required, the same evidence that supports proximity may, in some circumstances, also support traceability. In the present

11

case, the Commonwealth acknowledged that the cash did not represent the proceeds of drug sales, and the trial court's order explicitly finds this. Rather the question here turns on whether there was slight traceability that Doebler intended to furnish the money in exchange for controlled substances or intended to use the money to facilitate any other violation of KRS Chapter 218A.

As Justice Liebson noted in his separate opinion in *Osborne*, whether property is traceable to a drug transaction may be inferred from the totality of the circumstances. *Osborne*, 839 S.W.2d at 285 (Liebson, J. concurring). As such, a trial court can draw inferences from the totality of the circumstances within its knowledge to determine whether the requirement of slight traceability has been met. In its forfeiture order, the trial court accepted Doebler's explanation regarding the source of the funds but disbelieved her explanation for her presence in the room, saying:

> KRS 218A.410 states that all proceeds intended to be used to facilitate a drug transaction are forfeitable, and the burden of proof to rebut the presumption is on [Doebler]. Given the nature of [Doebler's] conviction herein and the proximity of the cash proceeds to the drugs at the time they were discovered by the police, the court finds [Doebler] has not carried her burden of proof.

The trial court implicitly accepted the Commonwealth's contention that it had established a *prima facie* case. Therefore, the Commonwealth was entitled to a presumption of forfeiture due to the connection between Doebler's guilty plea for possession of drug paraphernalia, the presence of the cash, and the surrounding circumstances.

We note, as a best practice, a forfeiture hearing would begin with the Commonwealth establishing a basis for forfeiture by putting forth affirmative proof. However, we acknowledge the timeline in this instance. The forfeiture hearing began approximately five minutes after the conclusion of Doebler's plea hearing and a half-hour after the trial court's sentencing of Doebler's co-defendant, Lankford. Therefore, the forfeiture hearing was a continuation of those proceedings. From those proceedings, the trial court knew the following facts: both Doebler and Lankford were in room 226 of the motel at 6:30 a.m. on March 14, 2017; the cash was in Doebler's purse; there were sufficient quantities of drugs in room 226 to sustain a trafficking plea by Lankford; there was a scale in the room; Lankford had a long criminal history, including at least one other methamphetamine trafficking offense; and Doebler admitted to possession of a syringe. Doebler's plea was to a lesser charge, but a conviction for trafficking is not required to justify forfeiture, *Osborne*, 839 S.W.2d at 283, and while the most damning evidence implicated Lankford more directly, the court may properly draw inferences from that knowledge. Although we note the aforementioned facts and evidence, in best practice, the trial court should make explicit findings of facts upon which it has relied in reaching its decision.

Defense counsel appeared to tacitly acknowledge that the facts contained in both plea allocutions, as well as Lankford's sentencing, were sufficient to infer the proximity and traceability required to trigger the statutory presumption and place the burden on Doebler to rebut that presumption. Defense counsel made no objection to the court's direction that the defense

proceed first in the forfeiture hearing or even showed any surprise at being asked to do so. Furthermore, in his summation, defense counsel acknowledged that the burden was on Doebler to rebut the presumption in this case and focused on the Commonwealth's failure to put on affirmative evidence to counter the defense's rebuttal. We recognize a more proper courtroom procedure would have been for the Commonwealth to formally ask the court to take judicial notice of the plea allocutions and other surrounding evidence and find that when considered together, they established the proximity and slight traceability required to trigger the statute's presumption of forfeiture. However, once triggered, the presumption shifted the burden to Doebler to convince the court that there was no connection between the money and the drug trafficking by clear and convincing evidence. When viewed in light of the totality of the circumstances known to the trial court, it was not clearly erroneous for the court to find that there was sufficient proximity and traceability to invoke the presumption of forfeiture in KRS 218A.410(1)(j) in favor of the Commonwealth.

As to the question of whether Doebler successfully rebutted the presumption, the court's decision is analyzed for an abuse of discretion. *Robbins*, 336 S.W.3d at 65. "The test for abuse of discretion is whether the trial [court's] decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). While Doebler successfully convinced the trial court that the source of the funds was legitimate, she failed, in the trial court's view, to rebut by clear and convincing evidence that she did not intend to use the money for drug

14

transactions or to facilitate a violation of chapter 218A. KRS 218A.410(1)(j). The trial court heard Doebler's explanation for her presence in the motel room. The court also heard her timeline since receiving the money the prior day. It heard her admission that significant quantities of drugs were found in the room and her denial that she knew they were there. The court could properly weigh this against the effect of her plea and her testimony on cross-examination that she did not know that the drugs were in the room.

A trial court is not bound to accept the testimony of any witness as true. *Dunn v. Commonwealth*, 151 S.W.2d 763, 764 (Ky. 1941); *see also McQueen v. Commonwealth*, 721 S.W.2d 694, 698 (Ky. 1986) (recognizing the trial court's superior position to judge witness credibility and the weight to be given their testimony). Most of this information was elicited from Doebler on cross-examination rather than through direct examination of the Commonwealth's own witnesses, but that does not make its impact any less relevant to countering Doebler's attempt to rebut the statute's presumption. We cannot say from the record that the trial court's determination that Doebler's testimony was insufficient to overcome the presumption by clear and convincing evidence was arbitrary, unfair, unreasonable, or unsupported by legal principles. To do so would be to substitute our judgment of Doebler's credibility for that of the trial court.

### B. Doebler's excessive fines argument was unpreserved, and any error was not palpable.

Lastly, Doebler contends the forfeiture of $3,759 for a criminal violation with a maximum fine of $500 is violative of her rights under the Eighth

Amendment of the United States Constitution and Section 17 of the Kentucky Constitution. In *Timbs v. Indiana,* —— U.S. ——, 139 S.Ct. 682, 203 L.Ed.2d 11 (2019), the United States Supreme Court held that the Eighth Amendment's excessive fines clause is "fundamental to our scheme of ordered liberty," and is therefore incorporated by the Due Process Clause of the Fourteenth Amendment and is enforceable against the states. *Id.* at 686. "The purpose of the Eighth Amendment . . . was to limit the government's power to punish." *Austin v. United States,* 509 U.S. 602, 609 (1993) (citing *Browning–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 266–67 (1989)). The clause applies to forfeitures so long as the forfeiture is at least partially punitive. *Timbs,* 139 S.Ct. at 689.

While *Timbs* was rendered after the consideration of the forfeiture issue herein, even prior to *Timbs,* Kentucky courts had concluded that an excessive fine could violate both the Eighth Amendment and Section 17 of the Kentucky Constitution.[4] The duty to raise an excessive fines violation lies with the defendant. Doebler did not raise the issue with the trial court, and the issue is unpreserved as recognized by Doebler's request for a palpable error review under Kentucky Rules of Criminal Procedure (RCr) 10.26. "For an error to rise to the level of palpable error, 'it must be easily perceptible, plain, obvious and readily noticeable.'" *Doneghy v. Commonwealth,* 410 S.W.3d 95, 106 (Ky. 2013)

---

[4] *Harbin,* 121 S.W.3d at 197 (citing *Austin,* 509 U.S. 602) (holding punitive forfeitures implicate the excessive fines clause); *see also Commonwealth v. Fint,* 940 S.W.2d 896, 897-98 (Ky. 1997); *Hinkle v. Commonwealth,* 104 S.W.3d 778, 782 (Ky. App. 2002).

16

(quoting *Brewer*, 206 S.W.3d at 349). We will reverse under the palpable error standard only when a "manifest injustice has resulted from the error." RCr 10.26.

The touchstone of the constitutional inquiry under the excessive fines clause is the principle of proportionality. *U.S. v. Bajakajian*, 524 U.S. 321, 334 (1998). This determination hinges upon whether the property was "sufficiently tainted by the criminal act to be subject to forfeiture" and whether the forfeiture itself was grossly disproportionate to the particular offense considering "the gravity of the offense, the potential penalties, the actual sentence, sentences imposed for similar crimes in this and other jurisdictions, and the effect of the forfeiture on innocent third parties*." Hill*, 308 S.W.3d at 230 (quoting *Smith v. Commonwealth*, 205 S.W.3d 217, 223 (Ky. App. 2006)).

Kentucky courts have approved a range of forfeitures depending on the factual circumstances. We approved the forfeiture of $1,010 found on a defendant arrested for drug trafficking, but who eventually pleaded guilty to possession. *Robbins*, 336 S.W.3d at 62, 65. In *Osborne* itself, while the issue of traceability of the money was divisive, the court approved the forfeiture of an automobile owned by Osborne based on its use to facilitate Osborne's ex-husband's drug trafficking. 839 S.W.2d at 283. The Court of Appeals has held the forfeiture of $2,175 was not excessive where the defendant was potentially liable for fines up to $10,000. *Hill*, 308 S.W.3d at 231. In *Johnson v. Commonwealth*, the Court of Appeals approved the forfeiture of $4,500 in $50s and $100s, denominations not normally associated with drug trafficking,

17

because it was found in proximity to the trafficking activities occurring in the same hotel room. 277 S.W.3d at 641.[5]

Doebler emphasizes that the maximum fine for the offense for which she was convicted was $500, but fails to recognize that as part of its acceptance of her plea, the Commonwealth dismissed charges with a total potential penalty of $20,000. As we have said in the past, conviction is not required to justify forfeiture. Additionally, the trial court found that while the money was not the proceeds of a drug transaction, it was "intended to be used to facilitate a drug transaction." Therefore, we hold that any error is not easily perceptible, plain, obvious, and readily noticeable nor that it rises to the level of manifest injustice.

We reemphasize that when a forfeiture is ordered, it is the appellant's responsibility to ensure the order is supported by sufficient findings of fact and conclusions of law to permit satisfactory appellate review of the order. Because any error, if it existed, was not palpable, we hold the Jefferson Circuit Court did not abuse its discretion in ordering the forfeiture of the $3,759.

---

[5] Looking to cases in other jurisdictions: in *United States v. One 1990 Ford Ranger Truck*, 876 F.Supp. 1283 (N.D. Ga. 1995), a truck transporting a small amount of psilocybin mushrooms was ordered forfeited; in *Worthington Police v. One 1988 Chevrolet Berreta*, 516 N.W.2d 581 (Minn. Ct. App. 1994), a vehicle valued between $2,500 and $4,500 which was used to transport a stolen color TV worth $300 from the scene of the crime to another person was ordered forfeited; and in *State ex rel. McGehee v. 1989 Ford F–150*, 888 P.2d 1036 (Okla. Ct. App. 1994), a truck used to transport fifteen grams of marijuana was ordered forfeited. While these cases dealt with vehicle forfeitures, the relative value of the property when compared to the offense is still illustrative of the issues involved.

### III. CONCLUSION

For the aforementioned reasons, we reverse the Court of Appeals and reinstate the Jefferson Circuit Court's forfeiture order.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Daniel J. Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General

COUNSEL FOR APPELLEE:

Joshua Michael Reho
Louisville Metro Public Defender's Office